# JUNCTION CITY SCHOOL DISTRICT *v.* Margaret ALPHIN

CA 96-288                           938 S.W.2d 239

Court of Appeals of Arkansas
Division IV
Opinion delivered February 19, 1997

*Brazil, Adlong, Murphy & Osment*, by: *William Clay Brazil* and *Compton, Prewett, Thomas & Hickey, P.A.*, by: *William I. Prewett*, for appellant.

*Mitchell, Blackstock, & Barnes*, by: *Clayton R. Blackstock*, for appellee.

OLLY NEAL, Judge. Appellant school district takes this appeal from a November 28, 1995, order of the Union County Circuit Court. Appellee Margaret Alphin is a school teacher in the Junction City School District who, by action of the Junction City School Board on April 28, 1994, suffered a loss of 3/7th of her regular salary when the district unexpectedly resolved to reduce its expenditures by eliminating or reducing staff positions during the 1993-94 school year. The trial court correctly found that appellant's action in reducing Ms. Alphin's contract was in violation of the Arkansas Teacher Fair Dismissal Act, Ark. Code Ann. § 6-17-1501 et seq., and, therefore, we affirm the judgment. The court's decision to disallow appellee an attorney's fee was erroneous as a matter of law, and we therefore reverse on Ms. Alphin's cross-appeal.

Junction City School District is located on the Arkansas-Louisiana state line and is comprised of students from both states. Historically, both states have shared the financial burden of providing an education for the district's students. In March 1994, the district was notified by the Arkansas Education Department that the State of Arkansas would immediately terminate turn-back funds that Arkansas had provided in previous years. Upon the school district's request, the Union County Circuit Court entered a temporary injunction, holding the impending termination of funding in abeyance until the 1994-95 school year. Ms. Alphin requested a hearing before the school board, which was granted, and the hearing was conducted July 6 and 7, 1994. The board ultimately decided to offer appellee a part-time position, which amounted to a 3/7th reduction in her salary instead of the original proposition of a 4/7th reduction. Ms. Alphin accepted the modification subject to her right to appeal the board's decision. She subsequently took an appeal to the Union County Circuit Court.

In the circuit court's November 28, 1995, order, the court adopted the findings it set out in its September 20, 1995, letter opinion. The court found that appellant failed to comply with its own policy and applicable state law in reducing appellant's contract, and that the board's decision to do so was arbitrary and capricious. Ms. Alphin was awarded back pay for the period in which she received a reduced salary, reinstatement of her full-time status as a teacher, and an attorney's fee. The court later retracted the award of attorney fees.

At trial, Junction City School Superintendent Alvin Kelly testified that when it became apparent that the district would have to eliminate some staff positions, it was he who was designated by the school board to develop criteria to be used in determining which contracts to reduce or terminate. At the time of the 1993-94 "funding crisis," the district had two separate policies in effect. Policy GAAB related to the hiring, termination, and demotion of certified personnel and contained both objective and subjective standards for employee dismissal. Policy GKBA dealt with selection and dismissal of professional personnel and contained a provision for the development of a reduction in force policy by a committee composed of representatives from the major categories

of personnel in the district, and approval by the board. The Junction City School Personnel Policy Committee devised a reduction in force policy (RIF), which was submitted to the board on April 26th and 28th 1994, and ultimately rejected. Mr. Kelly admitted that teaching certification and seniority in the district were the sole factors he considered in terminating employees.

■ The district urges first that the applicable standard of appellate review of judicial determinations pursuant to the Arkansas Teacher Fair Dismissal Act is whether the trial court erred in finding that the board's decision is supported by a rational basis. This is somewhat of a misstatement of the law. In such appeals our review is limited to a determination of whether the circuit court's decision is clearly erroneous. *Helena-West Helena School District v. Davis*, 40 Ark. App. 161, 842 S.W.2d 873 (1992); *Murray v. Altheimer-Sherril Public Schools*, 294 Ark. 403, 743 S.W. 2d 403 (1988) (decision under prior law). Here, the trial court held that the manner in which the board attempted to reduce appellee's contract was not in compliance with its own personnel policies and therefore violated state law. The court concluded that because the board made its decision without reference to its own policies, any action the board took was, as a matter of law, arbitrary and capricious.

■ The Teacher Fair Dismissal Act has three requirements: 1) that each district have a set of written personnel policies; 2) that each district have a committee on personnel policies consisting of five classroom teachers and three administrators; and 3) that the school board approve or adopt any proposed policy or modification to existing policy. Ark. Code Ann. § 6-17-201; 6-17-203; and 6-17-205. Strict compliance with the Teacher Fair Dismissal Act has been required by law since 1989. *See Lester v. Mount Vernon-Enola School District*, 323 Ark. 728, 917 S.W.2d 540 (1996). School policy is part of teachers' contracts as a matter of law, and teachers may reasonably expect the district to comply with its own declared policy. Ark. Code Ann. § 6-17-204(a) (Repl. 1993); *Lauren Maxwell v. Southside School District*, 273 Ark. 89, 618 S.W.2d 148 (1981).

At the time Ms. Alphin's contract was reduced, appellant had a personnel policy in place. The only provision in the unified policy that specifically addresses the issue of reduction in force is the portion of policy GKBA which states:

> The Board of Education shall have the authority to terminate, demote, or reassign personnel within the School District at times when reduction in staff becomes necessary and essential to the successful financial operations of the district. . . . A specific and detailed plan of action for the reduction in the number of personnel, developed by representatives from the administrative, instructional, and auxiliary staff, and recommended to the superintendent for presentation to the Board of Education will be in compliance with statutory requirements and in accordance with Board of Education Policies.
>
> Should a RIF become necessary, implementation procedures will be designed (1) to maintain a high quality educational program and (2) to assure fair and equitable treatment of all district employees.

Under these terms, the district guaranteed only that it would reduce its force in a manner that would maintain educational standards, that it would not discriminate against any employee, and that any RIF policy would be developed by the committee and approved by the board. Inherent is the requirement that the board must adopt any standard to be used.

Policy GAAB, which was also in effect, addresses generally the issue of teacher dismissal, demotion, selection, and transfer. That section of the policy provides that both objective and subjective criteria will be used in determining action on teacher contracts. Those criteria include teacher certification, years experience teaching, years experience teaching in the district, years experience teaching a certain grade or subject, and any degrees, endorsement hours beyond degree, and voluntary participation in workshops, seminars, etc. Subjective considerations include past performance, ability, leadership, and personality. It is undisputed that superintendent Kelly used only two of thirteen enumerated criteria.

The court concluded that policy GAAB supplied the criteria for reduction that were missing from policy GKBA. The

authority to set standards is vested in the committee by operation of law and required by policy GKBA. Because superintendent Kelly testified that he alone decided which criteria to use in reducing the district's work force and because he failed to provide the guarantees enumerated in policy GAAB, we cannot say the trial court's finding that appellant failed to strictly comply with its own policy is clearly erroneous. Although the district had no specific RIF policy, the terms contained in policy GAAB were a part of its contract with appellee. We recognize that the district was under stringent time restraints. However, state law precludes the district from circumventing the criteria for fairness in dismissal set out in its own policy. *See Murray v. Altheimer-Sherril Pub. Schools*, 294 Ark. 403, 743 S.W.2d 403 (1988) (decision under prior law).

■ An action brought pursuant to the Fair Dismissal Act is both a civil action and "a claim for 'labor or services'" within the meaning of Ark. Code Ann. § 16-22-308, the general statute authorizing attorney's fees. *Sosebee v. County Line Sch. Dist.*, 320 Ark. 412, 897 S.W.2d 556 (1995); *City of Ft. Smith v. Driggers*, 305 Ark. 409, 808 S.W.2d 748 (1991). The supreme court held in *Driggers* that the subject matter of the underlying litigation is solely dispositive of whether Ark. Code Ann. § 16-22-308 may be invoked.

■ Because the trial court failed to exercise its discretion to award or deny an attorney's fee, reversal and remand is required for consideration of the issue. *See Chrisco v. Sun Industries, Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990).

Affirmed on direct appeal; reversed and remanded on cross appeal.

ROBBINS, C.J., and ROAF, J., agree.