Angela OLSEN *v.* EAST END SCHOOL DISTRICT

CA 03-559                                          143 S.W.3d 576

Court of Appeals of Arkansas
Division IV
Opinion delivered January 28, 2004

[Petition for rehearing denied March 10, 2004.]

*Martin Law Firm, P.A.*, by: *Thomas A. Martin*, for appellant.

*Brazil, Adlong & Winningham, PLC*, by: *William C. Brazil*, for appellees.

TERRY CRABTREE, Judge. Appellant Angela Olsen's contract as the principal of appellee East End School District's high school for the 2000-2001 school year was not renewed. The Perry County Circuit Court upheld the District's decision not to renew appellant's contract. We affirm.

Appellant was the principal of East End High School during the 1999-2000 school year. Her contract for the 2000-2001 school year was not renewed based upon the recommendation of the superintendent, Douglas Adams. Adams sent appellant a letter on April 15, 2000, stating that he intended to recommend to the school board that they not renew appellant's contract because he was recommending that the school district reorganize from three schools, a high school, a middle school, and a kindergarten and elementary school, into a two-school district. This would leave the District with one extra principal, and appellant was the most recently hired. Appellant requested a hearing before the school

board. The board voted four to one to accept Adams's recommendation not to renew appellant's contract.[1]

Appellant challenged the District's action by filing a "Petition for Writ of Mandamus and Complaint" under the Teacher Fair Dismissal Act (TFDA), Ark. Code Ann. §§ 6-17-1501 through 6-17-1510 (1999). The petition alleged that the District breached its contract with appellant by violating the TFDA and that such breach entitled appellant to all of the monetary benefits that she had under the 1999-2000 contract, plus interest and attorney's fees. Appellees answered and denied the allegations in appellant's petition.

Douglas Adams, the superintendent, testified that he sent a letter to appellant on April 15, 2000, stating that appellant's contract would not be renewed for the 2000-2001 school year because he was going to recommend a reorganization of the school district and that appellant was the principal with the least amount of service. He also stated that, at that time, there was no seniority-based reduction-in-force policy and that no such proposal had been placed before the school board.

Adams admitted that appellant's performance was not a factor in his decision to recommend that appellant not be renewed. He stated that his decision was based on the fact that the other two principals had been with the District in administrative capacities for over fifteen years and that they were doing good jobs. He explained that he made notes evaluating the principals throughout the year, noting whether there had been improvement or areas that needed improvement. He also said that, in February 2000, he requested identical information from each principal in order to complete the evaluations. He also testified that he told the principals that the decision whether to renew his own contract was being tabled until after the principals had been evaluated. He stated that appellant indicated that she had completed only six or seven of the seventeen teacher evaluations in February and was in no position to be evaluated at that time.

Adams testified that he began thinking about restructuring the District in January because the District was losing students and, thus, state funding. He stated that state standards required one principal for 300 students and that the District had 305 students in

---

[1] The individual appellees are the members of the school board who voted in favor of appellant's nonrenewal.

grades seven through twelve. He stated that the issue was discussed with the principals in one of the weekly administrators' meetings. He also stated that he asked appellant and the other principals to be involved in scheduling for the 2000-2001 school year so that he would be prepared if the board accepted the restructuring recommendation or retained the current configuration. He said that the nonrenewal decision was not based on the grievances appellant filed. He also stated that the restructuring decision was a financial one. He also stated that the board acted on his recommendation to restructure in June 2000.

Appellant testified that she was hired in 1999 to be the high school principal. She was certified as a principal, as well as for superintendent and curriculum specialist, based upon her having a master's degree and additional hours. She stated that the April 15, 2000, letter from Adams was the first written indication that her contract would not be renewed but that there had been other indications that her employment was in jeopardy. She testified that she had a "bumpy" relationship with Adams, resulting from, among other things, disagreements over her spending authority, Adams's decision not to expel a student who had threatened appellant, and a parent whom Adams had hired to be appellant's secretary. She stated that she received many memos from Adams, some of which she considered trivial and others she considered professionally threatening. Appellant testified that another source of friction between herself and Adams was whether she was a probationary employee. She said that the other principals were evaluated and had their contracts renewed in February but that she was not evaluated and renewed at the same time. She testified that the reason given for her not being evaluated in February was that not all of the high school teachers had been evaluated but that this requirement had not been communicated to her. Appellant stated that she believed that the reorganization was a pretext for the nonrenewal of her contract.

On cross-examination, appellant testified that the April 15 letter from Adams did not mention her performance as a reason for nonrenewal. She testified that she heard rumors concerning restructuring in March and asked Adams about them, stating that, if true, one principal would be without a position. She testified that Adams told her that they were merely rumors and that he did not know what would happen.

The trial court found that the District was not required to have a reduction-in-force policy; that, because no reduction-in-

force policy exists, it could not be incorporated into appellant's contract; and that the decision not to renew appellant's contract was not arbitrary and capricious. This appeal followed.

Appellant raises three points on appeal: that the District's amendment of its personnel policies violated the TFDA, and the nonrenewal of appellant's contract was void; that the future possibility of reorganization of the school structure and future adoption of a reduction-in-force policy are not "facts" that can support a nonrenewal under the TFDA; that the District did not strictly comply with its own policies regarding the date for employing principals, and the nonrenewal of appellant's contract was void.

The standard of review in cases under the TFDA is limited to whether the trial court's decision is clearly erroneous. *Junction City Sch. Dist. v. Alphin*, 56 Ark. App. 61, 938 S.W.2d 239 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the firm conviction that a mistake has been made. *Hedger Bros. Cement & Materials, Inc. v. Stump*, 69 Ark. App. 219, 10 S.W.3d 926 (2000). The question of whether or not a school district has strictly complied is a question of law. *Jackson v. El Dorado Sch. Dist.*, 74 Ark. App. 433, 48 S.W.3d 588 (2001). A trial court's conclusions on a question of law will be given no weight on appeal. *Kelly v. Kelly*, 341 Ark. 596, 19 S.W.3d 1 (2000).

In her first point, appellant argues that the district illegally amended its personnel policies to adopt a seniority-based reduction-in-force policy and that this illegal procedure thereby voids the decision not to renew her contract. In Ark. Code Ann. § 6-17-1503,[2] the General Assembly laid out the construction of the statutory scheme, noting that:

> This subchapter is not a teacher tenure law in that it does not confer lifetime appointment nor prevent discharge of teachers for any cause which is not arbitrary, capricious, or discretionary. *A nonrenewal*, termination, suspension, or other disciplinary action by

---

[2] The Arkansas General Assembly amended Ark. Code Ann. § 6-17-1503 in Act 1739 of 2001 to require only "substantial compliance" with the TFDA. The version of the TFDA in effect at the time of the nonrenewal of appellant's contract governs the action. *Foreman Sch. Dist. No. 25 v. Steele*, 347 Ark. 193, 61 S.W.3d 801 (2001).

a school district *shall be void* unless the school district strictly *complies with all provisions* of this subchapter *and the school district's applicable personnel policies.*

(Emphasis added.) Furthermore, section 6-17-1506 notes that a teacher's contract can be renewed automatically "unless by May 1 of the contract year, the teacher is notified by the school superintendent that the superintendent is recommending that the teacher's contract. not be renewed...." Finally, if a teacher has been notified that his contract will not be renewed, that teacher can file a written request for a hearing with the school board. Ark. Code Ann. § 6-17-1509(a). Upon receipt of that request, the school board must grant a hearing no sooner than five days nor more than ten days after the request has been served, unless the teacher and board mutually agree in writing to postpone the hearing to a later date. Ark. Code Ann. § 6-17-1509(c)(1). Under the TFDA, nonrenewal of a contract is void unless procedures are strictly followed. Ark. Code Ann. § 6-17-1503; *Western Grove Sch. Dist. v. Terry*, 318 Ark. 316, 885 S.W.2d 300 (1994).

██ Appellant concedes that the District is not required to have a reduction-in-force policy in place. Further, we believe that Adams's April 15 letter was not actually a statement that appellant's contract was not being renewed based on a reduction-in-force policy. Rather, we believe that the April 15 letter was more of an explanation *why* the contract was not being renewed. Section 6-17-1506(b)(2)(B) requires that the notice of nonrenewal contain a statement of the reason so that the teacher can prepare a defense. The decision to terminate a teacher pursuant to the TFDA is a matter within the discretion of the school board, and the reviewing court cannot substitute its opinion for that of the school board in the absence of an abuse of that discretion. *Helena-West Helena Sch. Dist. v. Davis*, 40 Ark. App. 161, 843 S.W.2d 873 (1992). We cannot say that the trial court's finding that the district was not required to have a reduction-in-force policy in place is clearly erroneous.

In her second point, appellant argues that the future possibility of school reorganization and the possibility of adoption of a reduction-in-force policy cannot support a nonrenewal of her contract under the TFDA. Appellant's argument appears to be that, because the District had not been reorganized prior to her nonrenewal, the reorganization cannot be a factor in the decision not to renew her contract. Appellant admits that the decision to

reorganize the District was made in the 1999-2000 school year, *after* the decision had been made not to renew her contract. The parties read *Spainhour v. Dover School District*, 331 Ark. 53, 958 S.W.2d 528 (1998), as requiring that a school board not have any preconceived notions when deciding whether or not to renew a teacher's contract. However, we do not interpret the case that way.

█ In *Spainhour*, the superintendent sent a letter on April 12, stating that he was recommending that the teacher's contract not be renewed because of possible loss of federal funds and that he intended to present the matter to the school board at its May 9 meeting, which was less than thirty days after receipt of the nonrenewal recommendation. The board held its meeting on May 9 as scheduled and decided not to renew Spainhour's contract. Spainhour timely requested a hearing by letter dated May 12, 1994, but the board did not conduct that hearing until May 18, 1994, *after* it had already accepted the superintendent's recommendation not to renew Spainhour's contract. The supreme court held that the Dover School District failed to strictly comply with section 6-17-1509 by failing to give Spainhour a hearing *before* it voted not to renew her contract. The court also stated that the second hearing appeared to comply with the TFDA because the attorneys asked the board members before the second hearing whether they could be fair and impartial and keep an open mind. We believe that a plan to reorganize a district and eliminate positions is not the same as directly voting whether to renew a specific teacher's contract. We affirm on this point.

In her third point, appellant argues that the District did not strictly comply with its own policies regarding the date for employing principals and that the nonrenewal of appellant's contract was void. The District had a policy stating that the "selection" of principals will take place at the February board meeting. Under Ark. Code Ann. § 6-17-204(a) (1999), the provisions of the District's personnel policies were incorporated into appellant's contract and appellant was entitled to rely on those provisions. *Junction City Sch. Dist. v. Alphin, supra.* Appellant argues that this had the effect of requiring the District to make its decision on nonrenewal of principals earlier than the May 1 deadline provided in Ark. Code Ann. § 6-17-1506. Appellant's argument continues

that the District failed to comply with its own February deadline, rendering the decision not to renew her contract void under Ark. Code Ann. § 6-17-1503.

■ Appellant raised this issue below, and the question was litigated at trial. However, the trial court did not specifically rule on this point. Our courts have repeatedly held that a party's failure to obtain a ruling is a procedural bar to this court's consideration of the issue on appeal. *See, e.g., Doe v. Baum,* 348 Ark. 259, 72 S.W.3d 476 (2002); *E-Z Cash Advance, Inc. v. Harris,* 347 Ark. 132, 60 S.W.3d 436 (2001); *Barker v. Clark,* 343 Ark. 8, 33 S.W.3d 476 (2000). This rule applies with equal force in cases brought under the TFDA as appealed from circuit court. *See Higginbotham v. Junction City Sch. Dist.,* 332 Ark. 556, 966 S.W.2d 877 (1998). Accordingly, we are precluded from reviewing this issue on appeal.

Affirmed.

BIRD and GRIFFEN, JJ., agree.