Martha WILSON *v.* Raymond Wayne SCHUMAN

CA 04-709                                                   205 S.W.3d 164

Court of Appeals of Arkansas
Opinion delivered March 9, 2005

*John D. Bridgforth, P.A.*, for appellant.

*Danny W. Glover*, for appellee.

ROBERT J. GLADWIN, Judge. On January 15, 2004, the St. Francis County Circuit Court found that appellee Raymond Wayne Schuman had established a prescriptive easement on property owned by appellant Martha Wilson. The court further found that the prescriptive easement ran with the land, and the court enjoined appellant from interfering with appellee's use of the land. Appellant raises three points on appeal, arguing that the trial court erred in finding: (1) the trial court erred in finding that appellee established a prescriptive easement by adverse possession over lands

now owned by appellant; (2) the trial court erred in finding that the easement ran with the land; (3) the trial court erred in finding that appellee did not have permission to use the easement from the previous owners of the land. We agree with appellant's first point and, therefore, reverse.

In April 1989, Mary Griffiths purchased eighty acres from Donnie and Joyce Jones. In May 1989, Griffiths obtained an easement across the adjoining property, which was then owned by G.B. and Eleanor (Manley) Fogg. The Foggs granted to Griffiths a personal easement that would be in effect for a fifty-year period. Although Griffiths and appellee had moved to the area together from California, they were not married at the time of Griffiths's purchase of the eighty acres. Soon after the purchase, Griffiths and appellee married, and in 1990, they moved into the house they had built on the property. The easement that Griffiths (Schuman) had obtained was previously a logging road, which they improved by putting gravel on it. They also installed a gate on the easement with the Foggs' consent.

In December 1998, the Foggs sold their property to appellant, who was aware of the road crossing her property but only later discovered that the road led to the Schumans' house. Appellant sent a letter to the Schumans requesting a key to the gate that had been installed so that she could view the property. In the letter, appellant asked that the Schumans keep a lock on the gate because she did not want people on the property. A key to the lock was given to appellant.

In 2000, the Schumans separated. Griffiths (Schuman) moved out of state and, in August of that year, she conveyed her interest in the property to appellee. In the deed, Griffiths (Schuman) attempted to convey the easement to appellee as well.

In March 2002, appellant sent a letter to appellee in which she pointed out that the easement was personal to Griffiths (Schuman) and that if she was no longer using the easement, then there was no easement. Appellant advised appellee that he could use the easement for another thirty days to access his property but that after thirty days, she planned to change the lock and would prosecute trespassers. True to her word, appellant changed the lock after thirty days. Appellee removed the lock and filed a lawsuit the next day.

At trial, William Brimhall testified that he was sixty years old and had lived in St. Francis County for approximately thirty-two

years. He stated that the easement in question had been an unimproved timber-access road. Brimhall stated that, before appellee built a house at the end of the easement, he had gone onto the property for peace and quiet and had camped there one night. Brimhall stated that his neighbor, appellee, had kept the road graveled and mowed for approximately fifteen years. He further testified that appellant's property was unenclosed, unimproved, and uninhabited.

Calvin Wallace testified that he lived a few miles from appellee, and he stated that there had been a road to appellee's property for all of his life. He stated that, before appellee improved the road, it was a logging or "skidder" road. Wallace stated that he had hunted on the property when he was younger and that everyone had used the road. Wallace stated that, to the best of his knowledge, no one had gone past the gate onto appellee's property in the past ten to fifteen years except appellee and his invitees.

Appellee testified that he made the deal to buy the eighty acres from the Joneses but that the deed was not in his name. He acknowledged that the easement was likewise not in his name. Appellee stated that the eighty acres was unimproved and that access was gained to it via an old logging road. He estimated that he had spent $10,000 to improve the road. He testified that after the deed was filed, he and Griffiths (Schuman) put up a gate to keep people out and to protect their property. He conceded that the gate had been erected with the Foggs' permission. Appellee testified that the Foggs never objected to his use of the easement because he was married to Griffiths (Schuman). He clarified that the Foggs permitted him to use the easement as they had permitted Griffiths (Schuman) to use it. Appellee stated that in 1998 or 1999 Griffiths (Schuman) wanted to move north and that they put the property up for sale. He testified that the easement caused problems when they attempted to sell the property because he could not grant a permanent easement to the buyer. Appellee stated that Griffiths (Schuman) died in May 2003.

Appellant testified that she is a real estate broker with her own real estate company. She stated that when she purchased the property in 1998 she was aware of a road going across it but that she did not know that it went to appellee's property until after the purchase. Appellant stated that when she asked for a key to the gate, Griffiths (Schuman) brought her a key. She stated that the gate was left there with her permission. Appellant testified that after Griffiths (Schuman) left the property in 2000 or 2001, she was

contacted by someone concerning a permanent easement but that she did not want to grant one. Appellant stated that she did not want the current easement across her property because it impacted the value of it. Appellant testified that she did not object to appellee using the road while Griffiths (Schuman) was there and he was married to her.

Patricia Whitaker, manager of Forrest City Abstract Company, testified that she had researched the titles on the tracts of land owned by appellee and appellant. She stated that at some point someone tried to get a commitment to sell appellee's property to someone else. Whitaker stated that there was not a perpetual easement, which was a requirement for title commitment. She stated that the title insurance policy was not consummated.

In a letter opinion filed on December 15, 2003, the trial court noted that the parties had conceded that the easement from the Foggs to Griffiths (Schuman) was personal to her and that the easement was not transferable and terminated with the life of the grantee. In finding that appellee had established a prescriptive easement, the trial court found that appellee had used the easement for access to his home for approximately fourteen years. The court pointed out that the Foggs and appellant knew that the easement was personal to Griffiths (Schuman) but that appellee used it as well. The court concluded that appellee had used the easement without permission in excess of seven years and had thus established a prescriptive easement.

A prescriptive easement may be gained by one not in fee possession of the land by operation of law in a manner similar to adverse possession. *Owners Ass'n of Foxcroft Woods, Inc. v. Foxglen Assocs.*, 346 Ark. 354, 57 S.W.3d 187 (2001). In Arkansas, it is generally required that one asserting an easement by prescription show by a preponderance of the evidence that one's use has been adverse to the true owner and under a claim of right for the statutory period. *Id.* This court has said that the statutory period of seven years for adverse possession applies to prescriptive easements. *Id.*

Overt activity on the part of the user is necessary to make it clear to the owner of the property that an adverse use and claim are being exerted. *Carson v. County of Drew*, 354 Ark. 621, 128 S.W.3d 423 (2003). Mere permissive use of an easement cannot ripen into an adverse claim without clear action, which places the owner on notice. *Manitowoc Remfg., Inc. v. Vocque*, 307 Ark. 271, 819 S.W.2d

275 (1991). Some circumstance or act in addition to, or in connection with, the use which indicates that the use was not merely permissive is required to establish a right by prescription. *Craig v. O'Bryan*, 227 Ark. 681, 301 S.W.2d 18 (1957). The determination of whether a use is adverse or permissive is a fact question, and former decisions are rarely controlling on this factual issue. *Duty v. Vinson*, 228 Ark. 617, 309 S.W.2d 318 (1958). The plaintiff bears the burden of showing by a preponderance of the evidence that there has been adverse, not permissive, use of the land in question. *Id.*

Appellant points out that, in appellee's original complaint, he alleged that he was entitled to an easement by necessity and that he had a curtesy interest in the easement and, only after the court granted her directed-verdict motion on those claims, did he allege that he had established a prescriptive easement. Appellant argues that appellee admitted that he had used the easement because he was Griffiths's husband. According to appellant, appellee's first claim to a right of passage was when he removed her lock on May 1, 2002. She contends that prior to that day, appellee's use was permissive. She points out that appellee could have asserted his claim to the easement when she asked him for a key to the gate, and he did not. Appellant further argues that appellee approached her in 2000 or 2001 requesting an easement and that, if he had been hostile in his use of the easement, he would have asserted his entitlement to a prescriptive easement in his original complaint. Appellant maintains that appellee committed no acts that were open and notorious that would have put either the Foggs or her on notice that his claim was adverse.

The trial court's finding that appellee established a prescriptive easement under these circumstances was clearly against the preponderance of the evidence. Appellee committed no overt acts that would have put either the Foggs or appellant on notice that his use of the easement was adverse. To characterize appellee's act of placing gravel on the road as "adverse" would be improbable considering that it was done soon after the easement was granted to Griffiths and their house was built. In any event, his subsequent actions do not indicate that his use of the easement was adverse. For example, appellee's installation of the gate was done with the express consent of the Foggs and could not be considered adverse. Moreover, appellee gave appellant a key to the gate when she requested it, and, significantly, he asked appellant to grant him a permanent easement. On the contrary, appellee's actions dem-

onstrate that his use of the easement was merely permissive. Furthermore, any claim of right he may have asserted was pursuant to the personal easement granted to Griffiths (Schuman), which was extinguished when she died, and therefore was not adverse to the true owner.

Reversed.

PITTMAN, C.J., and VAUGHT, J., agree.