**Robert & Donna RIDENOURE, and Scotty & Tiffany Ridenoure, Appellants**

v.

**Carl D. BALL, Jr., and Marlys St. John–Ball, Appellees.**

No. CA 10–82.

Court of Appeals of Arkansas.

Jan. 26, 2011.

Sarah Lorimer Waddoups, Rogers, for appellant.

Vaughn–Michael H. Cordes, Springdale, for appellee.

WAYMOND M. BROWN, Judge.

This is an appeal from an order granting the Balls a prescriptive easement over the Ridenoures' property in Madison County. The Ridenoures present three arguments to this court: (1) the Balls failed to establish a prescriptive easement in light of evidence showing permissive use; (2) assuming that an easement had been established, said easement was abandoned; and (3) the circuit court's order grants an easement that is wider than the

evidence of adverse use. We previously ordered rebriefing, as the Ridenoures submitted a brief that did not comply with our rules.[1] Now that they have submitted a compliant brief, we hold that the circuit court did not err in finding that the Balls proved the existence of a prescriptive easement over the Ridenoures' property. We also hold that the circuit court did not err in [2]relying on a surveyor's description of the easement when it entered its order. Finding no error, we affirm.

### Background

Relevant use of the property goes back to the 1970s. The property now owned by the Ridenoures belonged to Steve Cochran, and the property now owned by the Balls previously belonged to Geoffrey Oelsner. Mr. Oelsner sold all of his property to Max Bolinger, who later subdivided the forty-acre parcel into four ten-acre strips. Due to financial trouble, Mr. Bolinger allowed the bank to foreclose on the property, but it was later sold to his daughter, Samantha Bolinger. For all intents and purposes, however, he controlled the property. Acting on his daughter's behalf, Mr. Bolinger sold two ten-acre tracts to the Balls in June 2004. As for the Ridenoures' property, Scotty and Tiffany Ridenoure purchased their thirty-acre tract from Gary and Cinda Wishon in May 2004, and Robert and Donna Ridenoure bought their ten acres from James Hicks in June 2004.

The Balls commenced suit to force the Ridenoures to allow access over their property. They sought other damages for legal fees incurred in trying to open the road, damage to their vehicles caused by using an alternate road, lost wages because they could not get off their property, and hotel stays incurred because they could not get to their property. The cir-

cuit court awarded no damages, and the Balls do not appeal from this ruling. Accordingly, evidence related to those damages are not relevant to this appeal. Other facts will be recounted as necessary to address the points on appeal.

[3]At a three-day bench trial, the circuit court considered whether the Balls had the right to use a private road on the Ridenoures' property, originally constructed by Mr. Oelsner. The road in question was at one time blocked by a blue gate, installed by Mr. Bolinger to prevent vandals from damaging the property. Mr. Bolinger removed that gate when he sold the Balls their property. The Balls used the road to get to and from their property. According to Mr. Ball's testimony, the dispute began in late June or early July 2004. Scotty Ridenoure came to his property, introduced himself, informed him that he was going to put in another road, and told him that they (the Balls) could no longer use the old road.

After hearing three days of testimony and arguments from counsel, the circuit court ruled from the bench that the Balls had established a right to use the private road. The court stated that the case was not won or lost by any activity that occurred after the Balls and the Ridenoures purchased their respective properties. Rather, the court focused on the property as it was used by Mr. Oelsner and Mr. Bolinger. It found that Mr. Oelsner's building a new roadway without anyone's permission was an overt act that put all landowners on notice that he was claiming an easement. It also ruled that Mr. Bolinger never abandoned that easement. Thus, it granted the Balls a prescriptive easement and ordered the parties to prepare an order.

---

1. *See Ridenoure v. Ball,* 2010 Ark. App. 572,  2010 WL 3422568.

After thirty days elapsed without an order, the court ordered the parties to show cause why an order had not been produced. At the show-cause hearing, the parties explained that they could not agree on several things, including the width of the easement. The court refused to reopen the record and ordered the parties to use the surveyor's description, whatever it was. The attorneys prepared the order, which was later entered by the court. This appeal followed.

## Standard of Review

We review cases that traditionally sound in equity de novo on the record, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous.[2] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.[3] In reviewing a circuit court's findings, we give due deference to the circuit court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony.[4] Disputed facts and determinations of witness credibility are within the province of the factfinder.[5] It is our duty to reverse if our own review of the record is in marked disagreement with the circuit court's findings.[6]

## Proof of a Prescriptive Easement

First, the Ridenoures argue that neither the Balls nor their predecessors in interest established a prescriptive easement. They contend that the Balls' predecessors used the road permissively and that there was no overt act to put the landowners on notice that they were claiming an adverse interest. They also assert that neither the Balls nor their immediate predecessor in interest, Ms. Bolinger, could have established a prescriptive easement because, put together, they owned the property for less than seven years.

A party asserting the existence of a prescriptive easement has the burden of proving its existence and that there has been adverse, not permissive, use of the land.[7] Use of a roadway over unenclosed and unimproved land is deemed to be permissive and not adverse to owners of land.[8] Permissive use of a roadway can ripen into adverse use if there is some overt activity on part of the user to make it clear to the owner of property that a claim of right is being exerted[9] Mere permissive use of an easement cannot ripen into an adverse claim without clear action placing the owner on notice.[10] Where there is usage of a passageway over land, whether it began by permission or otherwise, if that usage continues openly for seven years after the landowner has actual knowledge that the usage is adverse to his interest, or where the usage continues for seven years after the facts and circumstances of the prior usage are such that the landowner would be presumed to know the usage was ad-

---

2. *Carson v. County of Drew,* 354 Ark. 621, 128 S.W.3d 423 (2003).

3. *Id.*

4. *Id.*

5. *Id.*

6. *Id.*

7. *Id.; see also Riffle v. Worthen,* 327 Ark. 470, 939 S.W.2d 294 (1997).

8. *Burdess v. Ark. Power & Light Co.,* 268 Ark. 901, 597 S.W.2d 828 (Ark.App.1980).

9. *Id.*

10. *Manitowoc Remanufacturing, Inc. v. Vocque,* 307 Ark. 271, 819 S.W.2d 275 (1991).

verse, then such usage ripens into an absolute right.[11]

The court heard a lot of testimony over the trial's three days, but the testimony most relevant to this point came from Mr. Oelsner, whom the circuit court found very credible and whom it determined could have been the only party to have taken some overt action to claim an interest in the private road. Mr. Oelsner testified that he purchased his property in 1979, and to get to the cabin on the property at the time, he used a preexisting road that took him past a stone house owned by Steve Cochran. Because the parties dispute Mr. Oelsner's testimony regarding the circumstances upon which the road at issue was constructed, we quote directly from the record:

Q: Did you continue to use this road the entire time that you owned your property?

A: No. What happened was we knew and liked Steve Cochran. And we felt and he felt that when we drove that close to the house it was kind of obnoxiously close. And so by agreement, we decided to put in a kind of a shortcut road a little farther away from the house to get to our property.

Q: When did you put that road in? What year?

A: To the best of my recollection, that was in early autumn of 1979.

. . . .

Q: But from late fall—or early fall of 1979 to the time you sold it to Max Bolinger [in 1981], the road that you've indicated here is the only road that you used to get to the cabin.

A: That's right.

Q: You completely stopped using the earlier road.

A: That's right. This was just a friendly agreement that was done to improve and keep harmony, maintain harmony, between neighbors.

The parties dispute what Mr. Oelsner meant when he said *"we* decided to put in" a road and what he meant by "a friendly agreement." The Ridenoures claim that he was referring to an agreement between him and Mr. Cochran and that the "we" were he and Mr. Cochran. The Balls maintain that "we" referred to Mr. Oelsner and his wife and that the "friendly agreement" was simply not to drive so close to Mr. Cochran's house. The circuit court found that Mr. Oelsner took it upon himself to create the new road and that no other landowner interfered with what he did. Given the ambiguity, the circuit court's opportunity to view the demeanor of the witnesses becomes important, and we accept the circuit court's belief that Mr. Oelsner was referring to him and his wife in the above colloquy. This supports a finding that Mr. Oelsner was claiming adverse, not permissive, use of the road.

This conclusion is supported by Mr. Bolinger's testimony. He informed Ms. Reynolds, who worked for 911, that a sign needed to be placed on the road. He installed a gate to keep others from vandalizing the property. Mr. Bolinger testified that he, Mr. Wishon, and Mr. Hicks all agreed to put up the gate. He also directed others (friends, family, and subsequent purchasers) to use the road to access the property. And he gave the Balls an easement over another tract so that they could access the road. On cross-examination, he testified, "I didn't tell the Balls anything about going across the Ridenoure property. I just said the road had been there for

11. *Id.*

years and everybody, as far as I know, had an easement."

■ Mr. Oelsner's act of putting in the road to keep from driving so close to Mr. Cochran's residence and Mr. Bolinger's testimony regarding his use of the road and surrounding land supports the circuit court's finding that the Balls had established a prescriptive easement over what is now the Ridenoures' property. We hold that the circuit court did not err in so finding. Further, because this easement was established before they purchased the property, there was no need for the Balls to use the road for seven years before being able to claim the easement. When they purchased the property, they purchased the easement as well. Accordingly, we affirm on this point.

### Abandonment of the Easement

■ Next, the Ridenoures argue that any easement acquired by Balls' predecessors was subsequently abandoned. To support this argument, they rely on Mr. Ball's testimony that there was no sign that anyone had lived on the property for the last ten years, evidence that the cabin on the property was uninhabitable, and Ms. Reynolds's testimony that no one had lived in the cabin in twenty years.

■ Once gained, a prescriptive easement may be abandoned by more than seven years of nonuse.[12] But the record does not support a finding of abandonment. While the Ridenoures focused on a cabin on the property as evidence of an abandoned easement, the record shows that the easement was used up until the dispute between the parties. Testimony showed that, whatever state the cabin may have been in, it was used by hunters. Mr. Bolinger testified that the cabin was on the property in 1981 and that he used the road to access the cabin. He arranged to have the road graveled and called Ms. Reynolds to have the road marked as Private Road 2347. He stated that he used the road once or twice a day during deer season and that he let others use it as well. He also put a gate across the road to prevent others from vandalizing the property.

Testimony from others also shows that this road was extensively used. James Sands, who purchased property adjacent to both the Balls and the Ridenoures, testified that the easement over the Ridenoures' property was the only way he could access his own property. Linda Kay Fraker testified that Mr. Bolinger informed her and K.K. Kendrick that the gate was the access to the property. And Martin Sokol testified that he used the road to visit Mr. Kendrick.

In short, despite the conflicting testimony regarding the condition of the cabin, the record supports a finding that the road was used from the time Mr. Oelsner constructed it to the dispute between the Balls and the Ridenoures. The circuit court did not err in finding that the easement had not been abandoned, and we affirm on this point.

### Width of the Easement

■ Finally, the Ridenoures argue that the circuit court erred in granting an easement that was wider than the evidence of adverse use. As stated previously, the parties could not agree as to the form of the final order, and the court ordered the parties to draft a precedent using the legal description produced by a surveyor. The surveyor described an easement thirty feet in width. The Ridenoures contend that the circuit court erred in relying on this

---

12. *Owners Ass'n of Foxcroft Woods, Inc. v. Foxglen Assocs.*, 346 Ark. 354, 57 S.W.3d 187 (2001); *King v. Powell*, 85 Ark.App. 212, 148 S.W.3d 792 (2004).

description. They rely on Mr. Ball's testimony that the road was "a good ten feet wide," evidence that a single gate was sufficient to close the road, and photographs which they say show a road that is far less than thirty feet wide. The Balls contend that the circuit court did not err in relying on the surveyor's description.

We find no error in the circuit court's reliance on the surveyor's description. Other deeds in the record reveal thirty-foot easements, and when the circuit court handed down its bench ruling, the attorneys noted that the precedent could not be prepared until a surveyor provided a legal description of the easement. Counsel for the Ridenoures asked the court to address the width of the road, to which the court replied, "Well, they pled that it was a thirty-foot roadway, and as I said, the surveyor is going to have to provide the actual width." Nothing further was stated about the width of the easement at that time. It was clear from the court's bench ruling that it would rely on the surveyor's description, and the Ridenoures never objected. Further, neither side made the width of the easement a major issue at trial. The Ridenoures rely on a passing remark regarding the width of the easement in support of their argument before this court, but on the record before us, we cannot say that the circuit court clearly erred in relying on the surveyor's description. We affirm on this point as well.

Affirmed.

GLADWIN and HOOFMAN, JJ., agree.

