2011 Ark. App. 335

**Esther ROBERTS and Bruce Wade, Appellants**

v.

**James JACKSON, Appellee.**

No. CA 10–1294.

Court of Appeals of Arkansas.

May 4, 2011.

Ronald Wales Metcalf, Fort Smith, for appellants.

David Charles Gean, Fort Smith, for appellee.

CLIFF HOOFMAN, Judge.

Appellants Esther Roberts and her husband Bruce Wade appeal from an order of the Sebastian County Circuit Court finding that appellee James Jackson has a prescriptive easement over their property. The appellants present four arguments on appeal: (1) Jackson failed to establish a prescriptive easement in light of evidence showing permissive use; (2) assuming that an easement had been established, it was

subsequently abandoned; (3) Jackson has no right to a prescriptive easement because he is neither a tenant nor an owner of the adjoining property; and (4) the circuit court's order grants an easement that is wider than the evidence supports. We find no error and affirm.

Jackson claims to have acquired a one-half interest in the real property and house located at 717 North "N" Street in Fort Smith via quitclaim deed from his aunt, Rosie Cravens. Esther Roberts owns the property and house located at 715 North "N" Street, which is on the west side of Jackson's property. Jackson's house sits on the property line, and the roof overhangs about twelve inches onto the appellants' property. The city of Fort Smith has required that the exterior of Jackson's house be brought into compliance with the property maintenance code. If the requirements are not met, the city will pursue a warrant for a misdemeanor failure to care for premises. Jackson filed a complaint to impose an easement by necessity, a prescriptive easement, or a license on the property of the appellants for the purpose of making repairs and maintenance to his property. The appellants filed a counterclaim alleging that Jackson's property violated the city's set-back ordinance. The trial court entered a temporary restraining order enjoining Jackson or his agents from going on the appellants' property, and the case proceeded to trial.

Jackson testified that he lived at the house at 717 North "N" Street from 1973 to 1981 with his aunt Cecil Bailey and her son Herbert Brown. During this time period, Jackson said he maintained his yard and the yard at 715 North "N" Street, which was then owned by Ms. Rogers, including cutting the weeds between the properties. He testified that Ms. Rogers was "part of the family." Jackson said he maintained the air-conditioning unit, fuse box, and windows on the west side of the house. Although at some point his mother informed him that the driveway was not their property, Jackson testified that at the time he was doing this work he assumed he was on his family's property. He testified that he never needed permission to go on the west side of the property before Mr. Wade entered the picture.

In 1981 or 1982, Jackson left for the military and only occasionally returned to Fort Smith on leave. From 1994 to 2002, he was stationed in Oklahoma and was close enough to come back to the house occasionally and help his aunt maintain the property. In 2002, Jackson retired from the military and helped his aunt maintain the property.

Esther Roberts has lived in the house at 715 North "N" Street since 1996. At that time, Herbert Brown was living next door until about 2001. Roberts testified that Brown always asked permission to do anything on the west side of his house. After Mr. Brown moved out, Rosie Cravens tried to maintain the property by having people cut the grass. In 2002 and 2003, Roberts testified that she and her husband cut the grass for Ms. Cravens when they cut their own, until Ms. Cravens informed her that only her nephew was allowed to cut the grass. Roberts claimed she never saw Jackson until two or three years before the trial and she told him not to come on her property. She claimed that from 1996 to 2008, she did not allow anyone to come on her property to access the Jackson property and she did not know of anyone who did come on her property. She testified that she and her husband had made at least eight police reports when Jackson or others were on the west side of his house cutting the grass or doing repairs. She testified that she was afraid of people com-

ing onto her property because they made noise when it was dark and she did not know them. Bruce Wade testified that people working on the house for Rosie Cravens caused damage to his truck in 2005 and 2006.

The trial court found that a prescriptive easement existed for the purpose of maintaining and repairing Jackson's residence. The court ordered that the easement shall run from the front of Jackson's property line to a point five feet beyond the back of his residence along the west side of the residence and shall extend onto the appellants' property a width of ten feet. For Jackson to complete the required repairs to the home, the court ordered that the appellants shall remove the vehicle which prevents completion of the repairs. The court found for Jackson on the appellants' counterclaim and dissolved the temporary restraining order.

We review cases that traditionally sound in equity de novo on the record, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Ridenoure v. Ball*, 2011 Ark. App. 63, 381 S.W.3d 101. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* In reviewing a circuit court's findings, we give due deference to the circuit court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.* Disputed facts and determinations of witness credibility are within the province of the fact-finder. *Id.* It is our duty to reverse if our own review of the record is in marked disagreement with the circuit court's findings. *Id.*

First, the appellants argue that Jackson failed to establish a prescriptive easement because his initial use of the property was permissive. They claim there was no overt action to make it clear to the appellants that Jackson or his predecessors in title were claiming an adverse use of the appellants' property that continuously lasted for more than seven years.

A prescriptive easement may be gained by one not in fee possession of the land by operation of law in a manner similar to adverse possession. *Wilson v. Schuman*, 90 Ark.App. 201, 205 S.W.3d 164 (2005) (citing *Owners Ass'n of Foxcroft Woods, Inc. v. Foxglen Assocs.*, 346 Ark. 354, 57 S.W.3d 187 (2001)). In Arkansas, it is generally required that one asserting an easement by prescription show by a preponderance of the evidence that one's use has been adverse to the true owner and under a claim of right for the statutory period. *Id.* This court has said that the statutory period of seven years for adverse possession applies to prescriptive easements. *Id.*

Overt activity on the part of the user is necessary to make it clear to the owner of the property that an adverse use and claim are being exerted. *Id.* Mere permissive use of an easement cannot ripen into an adverse claim without clear action, which places the owner on notice. *Id.* Some circumstance or act in addition to, or in connection with, the use which indicates that the use was not merely permissive is required to establish a right by prescription. *Id.* The determination of whether a use is adverse or permissive is a factual question, and former decisions are rarely controlling on this factual issue. *Id.* The plaintiff bears the burden of showing by a preponderance of the evidence that there has been adverse, not permissive, use of the land in question. *Id.*

The appellants argue that Jackson's use of their property when he was a child was clearly permissive. They point

to his testimony that the neighbor, Ms. Rogers, was "part of the family" and that he assumed it was okay to be on the property between the houses. The appellants claim that the only conclusion that can be made is that Jackson had actual or implied permission to use Ms. Rogers's property.

In *Johnson v. Jones*, 64 Ark.App. 20, 977 S.W.2d 903 (1998), this court noted an exception to the general requirement of overt action. "Where there is usage of a passageway over land, whether it began by permission or otherwise, if that usage continues openly for seven years after the landowner has actual knowledge that the usage is adverse to his interest or where the usage continues for seven years after the facts and circumstances of the prior usage are such that the landowner would be presumed to know the usage was adverse, then such usage ripens into an absolute right." *Johnson v. Jones*, 64 Ark. App. 20, 25, 977 S.W.2d 903, 906 (1998) (citing *Fields v. Ginger*, 54 Ark.App. 216, 221, 925 S.W.2d 794, 797 (1996)). The *Johnson* court noted that it had previously "rejected the notion that it was necessary in all cases that persons claiming a prescriptive easement must openly communicate their intention to use the road adversely before permissive use can ripen into an adverse right and recognized that the length of time and the circumstances under which the roadway was opened and used are sufficient to establish an adverse claim, when those circumstances indicate that the true owner knew or should have known that the road was being used adversely." *Id.*

In *Johnson*, the appellees and their predecessor assumed that they had acquired a right to use a driveway along with title to their property. The appellants were aware that the appellees had acquired title to the property and had consistently used and maintained the driveway since that time. This court held that it was clear from the testimony that the appellees and their predecessor had used the driveway under a claim of right for over twelve years and that the appellants had never attempted to limit their access or to inform them that their use was permissive. *Id.*

When Jackson lived with family members at the house from 1973 to 1981, they consistently maintained the west side of the house. Although they knew that the driveway was not their property, the testimony establishes that they thought they had a right to maintain the west side of the house. There was no testimony that they ever requested or were granted permission. We cannot say that the trial court's finding of adverse use is clearly erroneous.

Once gained, a prescriptive easement may be abandoned by more than seven years of non-use. *King v. Powell*, 85 Ark.App. 212, 148 S.W.3d 792 (2004). The appellants argue that if a prescriptive easement was established for purposes of maintenance and repair from 1973 to 1982, it was abandoned during the period from 1982 to 1994 when Jackson was in the military. The appellants claim that Jackson did not testify about any type of activity on the property in question during this period of time by him personally or any other person. They claim that there is no evidence that the alleged prescriptive easement continued from 1982 to 1994 or that Jackson was ever physically present on the property during this time period.

As Jackson argues, he did testify that he came home occasionally on his leave from the military. Even though Jackson did not live at the home during this time period, his aunt Cecil Bailey lived at the house until her death in 1986, and Jackson's cousin Herbert Brown lived at the house until 2001 or 2002. Jackson argues that since Esther Roberts did not move in next

door until 1996, she does not have personal knowledge as to what took place during this time. We hold that the evidence does not establish abandonment of the easement. The house was occupied during the disputed time period, and there was no testimony demonstrating that the easement was not used.

The appellants also argue that Jackson's quitclaim deed purporting to give him title to the property was left blank in the space provided for the legal description of the property, and thus, the deed is void. The appellants claim that Jackson has no right to enforce any type of prescriptive easement on their property because he is neither an owner nor a lessee of the adjacent premises. As the appellants note in their reply brief, the trial court never addressed this issue. Our courts have repeatedly held that a party's failure to obtain a ruling is a procedural bar to this court's consideration of the issue on appeal. *Olsen v. East End Sch. Dist.*, 84 Ark.App. 439, 143 S.W.3d 576 (2004).

For their last point on appeal, the appellants argue that there is no evidence to support the imposition of a ten-foot easement over their property. They claim the relief granted exceeded Jackson's request for relief and that the trial court did not give due consideration to a reasonable alternative—requiring Jackson to move his house to the east. The appellants also claim there is no logical explanation of how the court arrived at the ten-foot-wide prescriptive easement when the city would have provided for only five feet.

A city housing inspector, Bill Striplin, testified on direct examination that generally, city regulations require a setback of ten feet from the adjoining owner's property line. However, on cross-examination, Striplin was presented with documents showing that the side setback is five feet.

Jackson testified that he needed enough room to use a ladder to access the roof, room to put in a window air-conditioner unit if he decides to do so, and room to maintain the electrical breaker. The trial court's order required that the appellants move their vehicles for Jackson to complete the current repairs. There was no testimony specifically regarding how much room had been used for maintenance in the past. We cannot say that the trial court clearly erred in granting an easement ten feet wide.

Affirmed.

VAUGHT, C.J., and GLADWIN, J., agree.