Cite as 2024 Ark. App. 424

# ARKANSAS COURT OF APPEALS
## DIVISION III
No. CV-23-169

| | |
|---|---|
| EAST MACEDONIA BAPTIST CHURCH, INC.; AND CLIFTON HAYES<br><br>APPELLANTS<br><br><br>V.<br><br><br>TODD ALLEN PETTIT AND THE STRACENER FAMILY REVOCABLE TRUST, DAVID STRACENER, TRUSTEE<br><br>APPELLEES | Opinion Delivered September 18, 2024<br><br>APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT<br>[NO. 43CV-22-188]<br><br><br>HONORABLE SANDY HUCKABEE, JUDGE<br><br><br><br>AFFIRMED |

## BART F. VIRDEN, Judge

Appellants East Macedonia Baptist Church, Inc., and its pastor, Clifton Hayes ("the Church"), appeal from the Lonoke County Circuit Court's order finding that appellees Todd Allen Pettit and the Stracener Family Revocable Trust, David Stracener, Trustee ("Stracener"), proved the existence of a nonexclusive prescriptive easement providing ingress and egress to 108 Scroggins Lane in England, Arkansas. The Church raises the following arguments: (1) Pettit and Stracener lack standing because they failed to assert any injury to themselves; rather, it was their tenants who were allegedly injured, yet they were not parties and did not testify; and (2) Pettit and Stracener failed to prove a prescriptive easement

because there was no overt action under a claim of right and their use began with permission. We affirm.

## I. *Background*

The Church's property is located at 101 A Street, which intersects with Scroggins Lane. The church itself faces A street, which is north of the church; Scroggins Lane is to the east of the church; and there is farmland on the west side of the church. The disputed gravel driveway is south of, or behind, the church and runs perpendicular to Scroggins Lane. 106 Scroggins Lane is adjacent to the lane, and 108 Scroggins Lane sits west of 106 and south of the Church's property. The gravel driveway runs straight past 106 Scroggins Lane, and testimony and photos show that it veers toward 108 Scroggins Lane, where it ends.

Exhibits and testimony show that the Church purchased its property in approximately 1985. Moreover, there is a deed dated 1986 showing that Lawrence Cates transferred the property at 108 Scroggins Lane to Virginia Cates. There is a March 2019 warranty deed referencing 108 Scroggins Lane showing that Virginia transferred an undivided one-half interest to Pettit and an undivided one-half interest to Stracener and his wife, Benita. A warranty deed filed in August 2021 shows that Stracener and his wife then transferred their one-half interest in the property to the Stracener Family Revocable Trust.

In March 2022, Pettit and Stracener filed a petition seeking, in relevant part, a prescriptive easement with respect to that portion of the Church's property used as a gravel driveway and injunctive relief related to the Church's recent construction of a fence

2

enclosing the driveway. Pettit and Stracener alleged that the driveway served as "the sole means of ingress and egress" to 108 Scroggins Lane, which they used as a rental property.

## II. *Bench Trial*

Stracener testified that he does not own 106 Scroggins Lane or 110 Scroggins Lane, which lies south of 106 Scroggins Lane. Stracener said that both he and the tenants of 108 Scroggins Lane had regularly used the gravel driveway behind the church to access the property during the three years he had owned the land but that, since the Church's construction of a fence, neither he nor the tenants—nor emergency vehicles—can access the property. Stracener said that access to the property is necessary for him to lease it. He said that a neighbor south of 108 Scroggins Lane had been allowing the tenant to cross his property to access 108 Scroggins Lane but would not allow access when it is wet. Stracener said that there is not enough room for a road on 106 Scroggins Lane to access 108 Scroggins Lane but that he had not measured it. He said that he had not made any improvements to the gravel driveway but that it had not needed any improvements.

Tommy Hobson, who was forty-six years old at the time of trial, testified that, before he was born, his aunt had owned 108 Scroggins Lane, and his grandmother had owned 106 Scroggins Lane. He stated that the house at 106 Scroggins Lane had been built around 1954 and that a carport had been added ten or fifteen years later. He said that one could not access 108 Scroggins Lane through that carport area because of the back porch and that it had never been used to access 108 Scroggins Lane. He said that the house at 108 Scroggins Lane had been built sometime after the house was built at 106 Scroggins Lane. He said that the

3

gravel driveway had been used to access 108 Scroggins Lane "all of [his] life." Hobson recalled that the driveway, which he described as an "alleyway," had been a dirt road at one time and had continued past 108 Scroggins Lane to the farmland west of the church. He stated that he remembered that a house had sat where the church currently sits. Hobson said that the driveway between the old house or barn and 108 Scroggins Lane was "the only way in and out to back there." He said that he did not know at the time who owned the property on which the driveway was located because he was just "a kid." Hobson stated that gravel had been on the driveway at issue when he was around ten years old because he remembered getting in trouble for throwing the rocks from it. Hobson further testified that a new road could not be constructed to access 108 Scroggins Lane because the houses at 110 Scroggins Lane and 106 Scroggins Lane were too close together and because there was not enough room between 106 Scroggins Lane and the gravel driveway at issue.

Scott Foster, a surveyor, testified that the gravel driveway runs east from Scroggins Lane to the west. He said that the gravel driveway is on the Church's property, which is Lot 6, but the further it goes toward the west, it veers onto Lot 7 and 108 Scroggins Lane. Foster stated that the house at 106 Scroggins Lane is about eight feet south of the Church's property line but that an air-conditioning unit extends eighteen inches north of the house, meaning that there is approximately six and a half feet of usable space. Foster said that the minimum width of a road for emergency-vehicle access is eight feet of usable clearance.

Hayes testified that he has been a pastor since 1983. He said that the Church's property was just a cow pasture in 1985 when it was purchased, although he recalled seeing

4

a house's foundation on the land, and he claimed that there was no road there at all. Hayes said that the church members moved into the newly built church in 1991, that he had the road (or driveway) built in 1995, and that a culvert was installed in 1997 or 1998. Hayes said that no one had assisted the Church in paying for construction of the road and that no one had ever maintained or made improvements to the road, other than his placement of gravel on it in 1995.

Hayes conceded that the tenants of 108 Scroggins Lane and their visitors as well as postal workers used the driveway behind the church to access the property. He said that he had not complained about this use. Hayes said that he would never give the Church's property away and pointed out that it is not his to give. He also testified that the tenants at 108 Scroggins Lane had used the driveway with permission and out of the Church's generosity and Christian kindness. He testified that the Church had decided to build a fence after the tenant at 106 Scroggins Lane had complained about church members parking on and blocking the road during a church program and that the tenant at 106 Scroggins Lane had blocked the road and cursed him. Hayes said that the tenant who had caused the trouble had since moved out of 106 Scroggins Lane. Hayes stated that he had no complaints about the current tenant at 108 Scroggins Lane but on rebuttal complained about a prior tenant who had trained dogs and left mattress pieces on the driveway that he had to remove.

Hayes further testified that a vehicle could access 108 Scroggins Lane by going south of 106 Scroggins Lane. He said that the carport on the south side of the house had been constructed after the Church had bought its property. He also insisted that he had worked

as a contract laborer and had measured the distance between the house at 106 Scroggins Lane and the Church's property line and that there was fourteen feet of usable space to construct a road.

Pettit testified that he and his brother purchased 106 Scroggins Lane in 2015. He said that the tenant at 108 Scroggins Lane is in his eighties and needs emergency vehicles to have access to the property. He stated that there is not enough room for a road wide enough for emergency vehicles to pass on either side of 106 Scroggins Lane. He said that, even if he agreed to permit construction of a road over the property of 106 Scroggins Lane, his brother had not similarly agreed. He said that the driveway behind the church had been used for decades and that there was no need for another road. According to Pettit, a driveway abutting 106 Scroggins Lane would devalue the property and make it harder to rent.

Roy Freeman testified that his wife is a member of the East Macedonia Baptist Church. He stated that Sybil Hobson, Tommy Hobson's grandmother, had lived at 106 Scroggins Lane a long time ago and worked with him and his brother at a furniture store. He said that he and his brother would give Sybil a ride to work. They would pull into the driveway behind her car under the carport. Freeman recalled that Sybil's daughter lived at 108 Scroggins Lane but said that he did not know how anyone gained access to the property and that he did not recall a gravel driveway.

Theodis Malvin, a church member, testified that he lived with his father in a house where the church now sits until 1979. He said that there was no road to 108 Scroggins Lane and that the daughter of the people who lived at 106 Scroggins Lane lived at 108 Scroggins

Lane. He said that the daughter would park her car in front of 106 Scroggins Lane and walk back to the house, but that when she had something too heavy to "tote" back there, her father would move his truck from 106 Scroggins Lane and let her drive through to access the property. Malvin said that there was no road behind the church until "the other day" when he saw "with his own eyes" Hayes and his crew putting in the culvert and laying the gravel for the road.

In its final judgment, the trial court found that Pettit and Stracener had proved the existence of a nonexclusive prescriptive easement providing ingress and egress to 108 Scroggins Lane. The trial court ordered the Church to remove any fence, posts, or other obstructions located on the easement within thirty days and prohibited the Church and its agents and assignees from interfering with the ingress and egress to 108 Scroggins Lane.[1]

### III. *Standard of Review*

We review cases that traditionally sound in equity de novo on the record, but we will not reverse a finding of fact by the trial court unless it is clearly erroneous. *Reynolds v. GFM, LLC*, 2013 Ark. App. 484, 429 S.W.3d 336. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Willows, LLC v. Bogy*, 2013 Ark. App. 59. In reviewing a trial court's findings, we give due deference to the trial court's superior position to determine the credibility of the witnesses and the weight to be accorded

---

[1]The Church asserts that the trial court's final order prohibits it from fencing its land. We do not read the final order this broadly.

7

to their testimony. *Reynolds, supra.* Disputed facts and determinations of witness credibility are within the province of the fact-finder. *Id.* It is our duty to reverse if our own review of the record is in marked disagreement with the trial court's findings. *Id.*

IV. *Discussion*

A. Standing

The Church argues that Pettit and Stracener lack standing because they do not assert that they themselves suffered any injury; rather, their tenants are aggrieved, yet those tenants did not testify to any injury. The Church argues that one may not adjudicate the claims of another and that standing is a threshold matter that may be raised for the first time on appeal.

Pettit and Stracener point out that the Church did not raise the issue of standing until its motion for a stay pending appeal. They argue that standing must be both raised and ruled on below in order to preserve the issue for appeal. We agree. *See, e.g., Ark. Game & Fish Comm'n v. Murders*, 327 Ark. 426, 938 S.W.2d 854 (1997) (refusing to address the issue of standing as to whether appellee hunters had standing to assert the rights of nonhunters because the matter was not raised below and the issue did not involve the court's jurisdiction). In any event, Pettit and Stracener alleged in their petition that both they and their tenants suffered harm as a result of the Church's interference with their access to the driveway by building a fence. Pettit and Stracener further alleged that their tenants will have grounds to terminate their leases with them if the property has no access; that their future ability to rent the premises will be impaired or rendered impossible if there is no access to

8

the property; and that the value of the property will be greatly diminished if there is no access to it. Stracener testified to this type of injury at the bench trial.

In addition, Pettit and Stracener have standing because they have a personal stake in the outcome of this controversy. *Pulaski Cnty. v. Ark. Democrat-Gazette, Inc.*, 371 Ark. 217, 264 S.W.3d 465 (2007). An easement by prescription, which passes with a transfer of the land, may be used by those who own or legally occupy any part of the estate to which the easement is appurtenant. *Carver v. Jones*, 28 Ark. App. 288, 773 S.W.2d 842 (1989). In other words, Pettit and Stracener as well as their tenants may benefit from an easement.

## B. Prescriptive Easement

A prescriptive easement may be gained by one not in fee possession of the land by operation of law in a manner similar to adverse possession. *Five Forks Hunting Club, LLC v. Nixon Fam. P'ship*, 2019 Ark. App. 371, 584 S.W.3d 685. Like adverse possession, prescriptive easements are not favored in the law because "they necessarily work corresponding losses or forfeitures in the rights of other persons." *Id.* In Arkansas, it is generally required that one asserting an easement by prescription show by a preponderance of the evidence that one's use has been adverse to the true owner and under a claim of right for the statutory period. *Id.* The statutory period of seven years for adverse possession applies to prescriptive easements. Ark. Code Ann. § 18-11-106 (Repl. 2015); Ark. Code Ann. § 18-61-101 (Repl. 2015).

Overt activity on the part of the user is necessary to make it clear to the owner of the property that an adverse use and claim are being exerted. *Owners Ass'n of Foxcroft Woods, Inc.*

9

*v. Foxglen Assoc.*, 346 Ark. 354, 57 S.W.3d 187 (2001). Mere permissive use of an easement cannot ripen into an adverse claim without clear action, which places the owner on notice. *Manitowoc Remanufacturing, Inc. v. Vocque*, 307 Ark. 271, 819 S.W.2d 275 (1991). Some circumstance or act in addition to, or in connection with, the use that indicates that the use was not merely permissive is required to establish a right by prescription. *Roberts v. Jackson*, 2011 Ark. App. 335, 384 S.W.3d 28. The determination of whether a use is adverse or permissive is a factual question, and former decisions are rarely controlling on this factual issue. *Id.* The plaintiff bears the burden of showing by a preponderance of the evidence that there has been adverse, not permissive, use of the land in question. *Id.*

The Church argues that Pettit's and Stracener's tenants were allowed to use the gravel driveway out of courtesy and because of the Church's generosity and Christian kindness, i.e., not because they had a right to use the road. The Church relies on *Baysinger v. Biggers*, 100 Ark. App. 109, 265 S.W.3d 144 (2007), that "[t]ime alone will not suffice to transform permissive use into legal title." The Church also points out that Pettit and Stracener have not claimed they excluded church members from using the driveway in order to show hostile use; instead, everyone has shared the road, and there has not been exclusive possession against the rights of the Church.

The trial court found that Pettit and Stracener proved the existence of a nonexclusive prescriptive easement. The evidence showed that Pettit and Stracener, their predecessors in title, their tenants, and visitors to those predecessors in title and tenants as well as postal workers have used the driveway behind the church to access 108 Scroggins Lane. Hayes

admitted that the Church did not object to the tenants' use of the gravel driveway, even when a former tenant left mattress bits on the driveway that he had to remove. It was not until the Church began plans to construct a fence in 2022 that there was an objection. Although Hayes contends that Pettit's and Stracener's tenants used the gravel driveway with the Church's permission, this does not account for the decades of use before the Church's purchase of the property. When there is usage of a passageway over land, whether it began by permission or otherwise, if that usage continues openly for seven years after the landowner has actual knowledge that the usage is adverse to his interest or where the usage continues for seven years after the facts and circumstances of the prior usage are such that the landowner would be presumed to know the usage was adverse, then such usage ripens into an absolute right. *Fullenwider v. Kitchens*, 223 Ark. 442, 266 S.W.2d 281 (1954).

As for *Baysinger*, *supra*, that case involved an "old timber road" through "forested land." There was no evidence that the long-time use had been hostile and nothing that would support a finding of generalized public use of the road, such as is present here. There was evidence that the driveway here was a dirt road leading to farmland before gravel was placed on it in the mid-1980s. The testimony shows that it was a well-defined road right off of Scroggins Lane long before the Church purchased the property. Moreover, there was testimony that the gravel driveway at issue has been the only means of access to 108 Scroggins Lane for decades. We are not left with a definite and firm conviction that the trial court made a mistake in finding that the use of this gravel driveway for decades was adverse, rather

11

than permissive, and that Pettit and Stracener proved by a preponderance of the evidence that they acquired a nonexclusive prescriptive easement.[2]

Affirmed.

WOOD and BROWN, JJ., agree.

*Robert S. Tschiemer*, for appellants.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellees.

---

[2]Citing Ark. R. Civ. P. 65, the Church also raises arguments having to do with preliminary injunctions; however, Pettit and Stracener did not pursue the remedy of a preliminary injunction after the trial court granted the Church's motion to set aside an ex parte temporary restraining order. The Church also asserts that "a more circuitous route does not constitute grounds for an easement or irreparable harm" and argues that "[t]here is absolutely no showing of necessity." The trial court, however, did not find an easement by necessity, and the Church acknowledges in its reply brief that "[t]his case is not about an easement by necessity." We do not address these arguments because the Church has not explained their relevance to the issues on appeal.