Aaron SLUYTER and Cheryl Sluyter  *v.*
HALE FIREWORKS PARTNERSHIP, Robert Mitchell Hale,
Suzyn Hale, Jane Hale, Lucas Hale

06-1442                                     262 S.W.3d 154

Supreme Court of Arkansas
Opinion delivered September 13, 2007

*Keith, Miller, Butler & Webb*, by: *Billy Bob Webb*, for appellants.

*Clark and Spence*, by: *Jim Clark*, for appellee/cross-appellant.

PAUL DANIELSON, Justice. Appellants Aaron and Cheryl Sluyter appeal from the circuit court's judgment vacating and setting aside a reciprocal easement, which they had with appellees Hale Fireworks Partnership, Robert Mitchell Hale, Suzyn Hale, Jane Hale, and Lucas Hale (hereinafter jointly referred to as "HFP"). Their sole point on appeal is that the circuit court erred in vacating and setting aside a written easement that ran with the land. HFP cross-appeals, asserting that the circuit court erred in denying its request for attorney's fees. We reverse and remand on direct appeal, which renders the cross-appeal moot.

A review of the record in the instant case reveals that on May 31, 1991, the owners of two adjoining tracts of property, located in Bentonville and now referred to as "Rainbow Curve,"entered into and recorded a reciprocal easement, "to provide for the common use of the driveways on the two tracts of land."[1] The agreement specifically provided that the easement "shall run with the land" and "shall be binding on and inure to the benefit of the Parties hereto and to their respective legal representatives, successors, and assigns." Subsequent to the agreement, the tracts changed ownership, with the Sluyters purchasing one tract and HFP purchasing the other. At some point, prior to 2005, the Arkansas Highway Department exercised its right of eminent domain, which interfered with HFP's easement over the Sluyters' property to Highway 12.

On July 8, 2005, HFP filed a complaint in the circuit court. In it, HFP alleged that after it had notified the Sluyters of its intent to erect a fence along the property line, the Sluyters had moved motor vehicles onto HFP's property so as to prevent the erection of the fence. HFP asserted that the Sluyters had routinely trespassed on its property and had interfered with its use and enjoyment of its property and requested that such trespass be enjoined and restrained by the circuit court. In addition, HFP requested that the reciprocal easement between the two parties be cancelled and set aside, in that there was no longer the possibility of reciprocity in the easement due to the widening of South Walton Boulevard by the Arkansas Highway Department. The Sluyters answered and, following a bench trial by the circuit court, the circuit court

---

[1] The agreement further related to the supply of water to the property; however, that is not at issue in the current appeal.

entered its judgment, as already noted, in which it vacated and set aside the easement. Specifically, the circuit court found:

> 6. Because there no longer exists the possibility of reciprocity in the Easement, due to the fault of neither party, but rather because of external circumstances, the essential purpose of the easement has been frustrated, and has failed. Therefore, it should be, and hereby is, vacated and set aside.

With respect to attorney's fees, which are at issue on cross-appeal, the circuit court found:

> 7. Since this matter essentially does not revolve around contract law, but rather has more aspects of tort law, the Plaintiffs' request for attorney's fees is denied, and each of the parties shall be responsible of [sic] their own attorney's fees and costs expended.

Both parties now appeal.

The Sluyters argue that none of the accepted methods for terminating an existing easement have been pled or argued in this case, and, accordingly, the circuit court erred in vacating the reciprocal easement at issue. They assert that both HFP and the circuit court have erroneously relied on a recognized defense to contracts, know as "frustration of purpose." In addition, they allege that misuse of an easement is insufficient to terminate an existing easement. HFP maintains that express easement grants are contracts under Arkansas law and, as such, should be construed according to the rules of construction of contracts. HFP contends that a reciprocal easement, such as the one in the instant case, could be characterized as an indenture contract and, thus, frustration of purpose could discharge responsibility under the contract. Because it contends that the Arkansas Highway Department extinguished the possibility of the easement being carried out as originally contemplated, HFP urges that equity and fairness require that the circuit court's judgment vacating the easement be affirmed.

In reviewing matters concerning easements, this court conducts a *de novo* review and will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *See, e.g., Bobo v. Jones,* 364 Ark. 564, 222 S.W.3d 197 (2006). A finding of fact is clearly erroneous, when, although there is evidence to support it, the

reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *See id.*

At issue in the instant case is whether the circuit court erred in terminating the reciprocal easement. An easement, in contradistinction to a simple or voluntary license, is a liberty, privilege, or advantage, which one may have in the lands of another without profit, and which may arise by deed or prescription.[2] *See Wynn v. Garland*, 19 Ark. 23 (1857). An easement is a property right, and, as such, is entitled to all the constitutional safeguards afforded to other property rights. *See Southwestern Bell Tel. Co. v. Davis*, 247 Ark. 381, 445 S.W.2d 505 (1969).

Here, the predecessors in interest to the tracts now owned by HFP and the Sluyters entered into a written and recorded agreement that each tract would have an easement over the other. Consequently, both tracts were bound by what is an known as an express easement.[3] *See, e.g., Kennedy v. Papp*, 294 Ark. 88, 741 S.W.2d 625 (1987) (observing that in general, an express easement may be created by a written instrument).

While this court has not previously discussed on what grounds an easement may be terminated or extinguished, the renowned treatise of *Powell on Real Property* provides the following guidance:

> An easement can terminate either by expiring in accordance with the intent of the parties manifested in the creating transaction, or by being extinguished by the course of events subsequent to its creation. Termination by extinguishment includes a wide variety of methods, some resting primarily upon conduct of the dominant owner, as for example, release and abandonment; some resting primarily upon conduct of the servient owner, as for example, prescription and conveyance to a third person having no actual or

---

[2] Citing to *Murchie v. Hinton*, 41 Ark. App. 84, 848 S.W.2d 436 (1993), HFP contends that an easement is a contract under Arkansas law. However, a review of that case and the cases it relies upon from this court reveals our interpretation of deeds using the principles of contract interpretation.

[3] An express easement differs from an "easement by necessity," which is defined as "[a]n easement created by operation of law because the easement is indispensable to the reasonable use of nearby property, such as an easement connecting a parcel of land to a road." *Black's Law Dictionary* 549 (8th ed. 2004). An easement by necessity terminates with the cessation of the necessity that brought it into being. *See Mettetal v. Stane*, 216 Ark. 836, 227 S.W.2d 636 (1950).

constructive notice of the easement's existence; some resting upon conduct in which both parties must participate, as for example, merger and estoppel; and some resting upon the conduct of outside entities, as for example, mortgage foreclosures, eminent domain and tax sales.

Under any of these methods, the easement can be terminated in whole permanently, in whole for a time, in part permanently, or in part for a time.

4-34 Richard W. Powell, *Powell on Real Property* § 34.18 (2005) (footnotes omitted).

In the instant case, HFP argues, in essence, that because the contracting parties' original intent and purpose has been frustrated, the easements should be terminated. We disagree. A similar argument was made in *AKG Real Estate, LLC v. Kosterman*, 296 Wis. 2d 1, 717 N.W.2d 835 (2006). There, AKG argued that one of the easements at issue should be terminated because it had become unnecessary. In that case, the Wisconsin Supreme Court observed Wisconsin's longstanding easement law that an express easement did not terminate even if the necessity or purpose of the easement had ceased.

The Oregon Court of Appeals has similarly so held. *See Cotsifas v. Conrad*, 137 Or. App. 468, 905 P.2d 851 (1995). In *Cotsifas*, the appellate court cited to Oregon case law holding that an express easement may be extinguished only by consent, prescription, abandonment, or merger. In addition, the court pointed out, only an easement by necessity terminates when the necessity ceases. *See id. See also Emery v. Crowley*, 371 Mass. 489, 359 N.E.2d 1256 (1976) (holding that an express easement can be extinguished only by grant, release, abandonment, estoppel, or prescription).

Here, a review of the easement agreement reveals the parties' clear intent that the easements "run with the land." Nothing in the agreement contemplated that the easements were to expire at any specific point, nor was termination provided for were frustration of the purpose to occur. Indeed, the language of the agreement was specific and clearly stated that the agreeing parties intended that the reciprocating easements were binding and would be used for business purposes:

1. Reciprocal Easements. Hensley hereby grants to Homstock/Pruden and Homstock/Pruden hereby grant to Hensley reciprocal easements for the use of themselves and their respective customers, lessees, employees, agents, and invitees to use the driveways and related lanes on either tract of land to gain access to the other tract of land. These easements shall run with the land.

. . . .

4. Binding Effect. This Agreement shall be binding on and inure to the benefit of the Parties hereto and to their respective legal representatives, successors, and assigns.

It further provided that no amendment to the agreement could be made, except in writing:

5. Entire Agreement. This Agreement contains the complete agreement between the parties with respect to the subject matter hereof. This Agreement may be amended only by an instrument in writing executed by the parties.

The agreement clearly demonstrates an express easement that was to run with the land. Merely because one of the easements was interfered with by the state's actions under its eminent-domain rights did not negate or render the remaining easement, which was to run with the land, any less valid.

■ Nor does any alleged misuse necessarily require termination of an easement. "Use of an easement for an unauthorized purpose, or the excessive use or misuse of it, is not sufficient to cause a forfeiture of the easement, unless the misuse of the easement is willful and substantial and not merely minor or technical." 25 Am. Jur. 2d *Easements & Licenses* § 99 (2007). Instead, other remedies may be used where misuse of an easement has occurred. *See id.* (suggesting the use of an injunction). *See also* James L. Buchwalter, Annotation, *What Constitutes, and Remedies for, Misuse of Easement*, 111 A.L.R. 5th 313 (2003).

Finally, even were we to adopt, which we do not, the changed-conditions doctrine proposed in *Restatement (Third) of Property (Servitudes)* § 7.10 (2000), it would not apply to the facts before us. Section 7.10 provides:

(1) When a change has taken place since the creation of a servitude that makes it impossible as a practical matter to accomplish the purpose for which the servitude was created, a court may modify the servitude to permit the purpose to be accomplished. If modification is not practicable, or would not be effective, a court may terminate the servitude. Compensation for resulting harm to the beneficiaries may be awarded as a condition of modifying or terminating the servitude.

(2) If the purpose of a servitude can be accomplished, but because of changed conditions the servient estate is no longer suitable for uses permitted by the servitude, a court may modify the servitude to permit other uses under conditions designed to preserve the benefits of the original servitude.

(3) The rules stated in § 7.11 govern modification or termination of conservation servitudes held by public bodies and conservation organizations, which are not subject to this section.

*Restatement (Third) of Property (Servitudes)* § 7.10 (2000). Here, while a change has certainly taken place that affected HFP's easement, the change has not made it impossible as a practical matter to accomplish the purpose for which both easements were created. The agreement's language reflects that the parties agreed to the reciprocal easements for use of "the driveways and related lanes on either tract of land and to gain access to the other tract of land." Indeed, the parties' purpose was clearly stated: "WHEREAS, the parties desire to provide for the common use of the driveways on the two tracts of land[.]" The accomplishment of that purpose, or common use, by the Sluyters has not been rendered impossible; thus, there is no basis for modifying, much less terminating, the easement under § 7.10.

■ While empathy can certainly be had for HFP in its loss of the use of its easement due to the state's power of eminent domain, the fact of the matter is that an easement agreement was entered into and recorded, which binds the now-owners of the two tracts of land. The Sluyters have neither agreed to extinguishment, nor have they abandoned their easement over HFP's property. The easement has not been prescripted, nor the properties merged. Accordingly, there is no basis on which to terminate or

extinguish the original and express reciprocal easement.[4] For these reasons, we reverse and remand.[5]

With respect to the cross-appeal, HFP argues that the circuit court erred in denying its motion for attorney's fees, where it had prevailed on all aspects of the case and where it maintains that the case is one in contract, which would permit an award of attorney's fees. The Sluyters respond that the plain language of Ark. Code Ann. § 16-22-308 (Repl. 1999) negates any award of attorney's fees in the instant case. However, based on our reversal of the circuit court's order, the cross-appeal is now rendered moot.

Reversed and remanded on direct appeal. Cross-appeal moot.

---

[4] While HFP urges us to use a "frustration of purpose" contract theory, it is not necessary to analyze the issue on appeal using that theory. As set forth above, there is substantial authority from other jurisdictions, dealing with the law of easements, to assist in making our determination.

[5] As the Wisconsin Supreme Court so eloquently stated, "Even at the risk of sanctioning unneighborly and economically unproductive behavior, this court must safeguard property rights." 296 Wis. 2d at 20, 717 N.W.2d at 845.