2012 Ark. App. 564

Gabino ACUNA, Appellant

v.

Randall WATKINS and Lillian
Rachelle Watkins,
Appellees.

No. CA 12–117.

Court of Appeals of Arkansas.

Oct. 10, 2012.

Orvin W. Foster, for appellant.

Michael Hamby, for appellees.

ROBERT J. GLADWIN, Judge.

On November 21, 2011, the Scott County Circuit Court ruled that a prescriptive easement had been acquired by the public for the use of Katie Drive, a roadway on appellant Gabino Acuna's land that allows

access to the parties' property. The trial court further held that appellant was prohibited from placing a fence or cattle guard across Katie Drive or at the intersection of Katie Drive and the driveway of appellees Randall and Lillian Rachelle Watkins, allowed appellant to place a fence along the east side of Katie Drive, and held that the restrictive covenant in appellees' chain of title requiring that a "suitable fence" be placed around the property was unenforceable due to vagueness. On appeal, appellant contends that the trial court erred: (1) in declaring that appellees proved a public prescriptive easement; (2) in refusing to enforce the restrictive covenant in appellees' chain of title; and (3) in prohibiting the placement of cattle guards by appellant. We affirm.

### Statement of Facts

Prior to March 25, 1978, J.B. Cox, Jr., and his wife owned all of the land involved in this litigation. At that time, the land was used for raising cattle. Over the next thirty years, several tracts were cut out of the original larger tract, and a subdivision developed, including the construction of two roads that provided access to these new residences. One of these roads, known as Katie Drive, comes off of U.S. Hwy 71 and goes through appellant's property.

This dispute arose between the parties when appellant announced his plan to place cattle guards on Katie Drive and in appellees' driveway so that he could run cattle across the drive. A cattle guard was installed on Katie Drive at its entrance onto Hwy 71. The City of Waldron removed the cattle guard based on its opinion that the roadway was a public-access road. Appellees also refused to place a cattle guard in their driveway, which turns immediately off of Katie Drive, and further refused to allow the construction of a fence along their east property line, which adjoins with the west right-of-way line of Katie Drive.

Appellant testified that he bought his property in 2009 with the intention of running cattle on it. He further testified that he installed a cattle guard immediately off of Hwy 71 at the turn onto Katie Drive. He said that he did not make application with the county judge or get his approval when installing the cattle guard. It is undisputed that, after the installation of the cattle guard, at the city's direction, it was removed. Appellant testified that when the mayor asked him to remove the cattle guard, he was told that it was not safe in light of the older people who live in that area. Appellant acknowledged the public usage of the roadway in question, verified that the trash truck picks up trash on the roadway, and agreed that the mail has regularly been delivered along the roadway. He noted that there are at least six households along Katie Drive and that people come and go from these houses on a regular basis.

Don Owens, the mayor of Waldron, testified that it was at the city's direction that the cattle guard was removed. He further verified that, as mayor, he had put gravel on the roadway, graded the roadway, and had done some backhoe work on it. He stated that, although Katie Drive is not a dedicated city street, it is a public-access road that the trash trucks, mail carriers, and the general public travel daily. He testified that he thought this public-access road did not need to have cattle traversing it. Mayor Owens described the area as "kind of a subdivision as it's developed." He stated that there are six houses along Katie Drive. He noted that he had lived in the area all of his life and did not remember cattle being run in the area since the existence of Katie Drive. He

further testified that Katie Drive has been in existence for more than seven years.

Appellee Randall Watkins testified that he purchased his property in 2007 from Donnie Hill. He testified that when he bought his home, Katie Drive had a city street sign on its entry. Mr. Watkins verified that the trash truck comes by regularly to pick up his trash at the end of his driveway, which immediately adjoins Katie Drive. He also testified concerning Laura Lane, which runs east of Katie Drive near the location of his home.

Donald Goodner, a licensed attorney in Waldron and operator of Scott County Title Company, testified that he had reviewed the title history of the tracts of property in question. He verified that he was familiar with Katie Drive and Laura Lane, not only through his title work, but also from having resided in Scott County and in Waldron for many years, and having traversed by the same several times per week. He testified that he had discovered a 1973 roadway easement, which he prepared, as well as a 1981 roadway easement. He said that after 1981, roadway easements were no longer required to be a part of title work. He recalled that the city, at one time, had claimed both Katie Drive and Laura Lane as city streets, and in fact, he had observed city street signs on both streets for many years. He said that it was only within the last couple of years that a dispute had arisen as to whether these were city streets or private drives.

Mr. Goodner further testified that he had discovered there were utility easements in the general area along Katie Drive—specifically, a sewage and waterline easement. He testified that, over the years, he had frequently observed local traffic going up and down the roadway, and he had visited friends who resided in the area. He testified that as part of his abstracting business, he relied upon 9-1-1 maps, which showed both of these roadways to be city streets. He noted that he had not observed a fence along either side of Katie Drive for at least the past ten-to-fifteen years. Mr. Goodner clarified that the two roadway easements, which he found dated 1973 and 1981, were roadway easements traversing along Katie Drive. These easements flowed in favor of Pat Ray and Diana Davenport as well as Thomas Griffin and Aletha Griffin. He also noted that, in his research of appellees' chain of title, Katie Drive was not mentioned in their deed. It was his opinion that Katie Drive was a city street.

When questioned by appellant's attorney concerning a 1978 deed from J.B. Cox, Jr., to Mr. Graham, Mr. Goodner noted that there were two covenants contained in it. One covenant restricted placement of mobile homes on the property, and the second required the grantee to build a suitable fence. Although this covenant was contained in the 1978 deed, Mr. Goodner said that, to his knowledge, a fence had never been built around the property. He further noted that the 1978 deed did not indicate that the fence covenant ran with the land. It was his opinion that the covenant was vague, unenforceable, and personal in nature.

Finally, James Forbes, Scott County Judge, testified that he was familiar with Katie Drive and understood that it was a city street. He assisted the city in maintaining the street due to the fact that the city did not have adequate equipment. He testified that he had been maintaining Katie Drive for five-and-a-half years in the form of grading it at least three times per year. He further testified that no one had made application with him under the Arkansas statute that requires the county judge's permission to put a cattle guard on public roadways. He stated that, given

the nature of this particular road, a cattle guard would not be reasonable. He reasoned that this area has developed into a subdivision and that cattle running free on this road would be a public hazard and would occupy a significant amount of his time and resources, as well as the Sheriff's Department's time and resources, in trying to keep the cattle off of the road. Judge Forbes went on to testify that this road is regularly traveled by public vehicles, small trucks, big trucks, trash trucks, and mail drivers. He further noted that, based upon amendment 55 to the Arkansas Constitution, he had deemed the same to be a public road, which the county would maintain.

Before making its ruling, the trial court reviewed the deposition testimony of James O. Cox, a circuit judge in Sebastian County and the son of J.B. Cox, Jr., the predecessor in title to the property at issue. Judge Cox testified that the restrictive covenant of a "suitable fence" referred to fencing suitable to keep the grantor's livestock from entering the property he had conveyed. Judge Cox stated that it had been ten years since he or anyone had run cattle on the property. He also testified that all of the properties had a fence around them at one time and that anyone that had property "back in there" would have had permission to use the road, but that was not included in any deed, easement, or plat. Finally, he testified that his father had primarily used the property for cattle.

The trial court found that the public had a prescriptive easement across Katie Drive, that appellant could not place a fence or cattle guard across Katie Drive, that appellant could place a fence on the east side of Katie Drive, and that the restrictive covenant in appellees' chain of title was unenforceable because it was too vague. From this order appellant filed a timely notice of appeal, and this appeal followed.

## Standard of Review

We review cases that traditionally sound in equity de novo on the record, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Ridenoure v. Ball,* 2011 Ark. App. 63, 381 S.W.3d 101. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* In reviewing a circuit court's findings, we give due deference to the circuit court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.* Disputed facts and determinations of witness credibility are within the province of the fact-finder. *Id.* It is our duty to reverse if our own review of the record is in marked disagreement with the circuit court's findings. *Id.*

## I. *Prescriptive Easement*

A party asserting the existence of a prescriptive easement has the burden of proving its existence and that there has been adverse, not permissive, use of the land. *Ridenoure, supra.* Use of a roadway over unenclosed and unimproved land is deemed to be permissive and not adverse to owners of land. *Id.* Permissive use of a roadway can ripen into adverse use if there is some overt activity on the part of the user to make it clear to the owner of property that a claim of right is being exerted. *Id.* Mere permissive use of an easement cannot ripen into an adverse claim without clear action placing the owner on notice. *Id.* Where there is usage of a passageway over land, whether it began by permission or otherwise, if that usage continues openly for seven years after the landowner has actual knowledge that the

usage is adverse to his interest, or where the usage continues for seven years after the facts and circumstances of the prior usage are such that the landowner would be presumed to know the usage was adverse, then such usage ripens into an absolute right. *Id.*

Appellant contends that appellees had never once been denied the use of Katie Drive by him. He complains that the circuit court's order effectively results in his not being able to use about twenty feet of his property for the entire length of the drive because he will be required to build his fence on the east side of the drive, even though he owns land to the west of the drive. He argues that an original permissive use, as this one was, cannot be rebutted solely by evidence showing the road was used by the public over an extended period of time. *Zunamon v. Jones,* 271 Ark. 789, 610 S.W.2d 286 (Ark.App.1981); *Le Croy v. Sigman,* 209 Ark. 469, 191 S.W.2d 461 (1946). Appellant argues that appellees had the burden of showing some circumstance or act, in addition to, or in connection with, the use of the way, tending to indicate that the use of the way was not merely permissive. *Zunamon, supra.*

Appellant argues that the use of the drive as a mail-delivery route, alone, is not enough. Also, appellant contends that sporadic road work by the city and county is not enough, citing *Craig v. O'Bryan,* 227 Ark. 681, 301 S.W.2d 18 (1957). He claims that there is no evidence in the record that the city or county has undertaken to maintain the road for more than seven years. He contends that Judge Cox's testimony that Katie Drive was used by permission, that the county judge had only maintained it for five-and-a-half years, and that there is no mention of the drive in any deed supports his argument that the circuit court's decision is clearly erroneous.

Appellees counter that there is no evidence of record concerning permissive use by the public in this instance. In Arkansas, it is generally required that one asserting an easement by prescription show by a preponderance of the evidence that one's use has been adverse to the true owner and under a claim of right for the statutory period. *Manitowoc Remanufacturing, Inc. v. Vocque,* 307 Ark. 271, 819 S.W.2d 275 (1991). The adverse claim established by the public is supported by the evidence. The street signs indicating that Katie Drive was a city street were testified to by appellee Watkins and Mr. Goodner. Mr. Goodner also testified that Katie Drive developed as part of the subdivision over the last ten-to-fifteen years. The fact that the road is utilized by trash trucks, mail trucks, and the public is undisputed. The county judge and mayor both testified that they conducted regular maintenance work over the last several years. Mr. Goodner found thirty-year-old roadway easements that ran along Katie Drive, utilized 9-1-1 maps in his abstracting business that indicate that Katie Drive is a city street, and concluded that it was his opinion that Katie Drive is a city street. Judge Cox's testimony that the use was permissive and that nothing was ever written down that gave anyone permission does not necessarily refute appellees' contention that the permissive use became adverse. Judge Cox also stated that the roadway had not changed in thirty years. Accordingly, we hold that the circuit court's finding that the public acquired a prescriptive easement is not clearly erroneous.

## II. *Restrictive Covenant*

We have observed that restrictions upon the use of land are not favored in the law. *White v. McGowen,* 364 Ark. 520, 222 S.W.3d 187 (2006). Further, a restrictive covenant will be strictly construed against limitations on the free use of land. *Id.* Thus, all doubts are resolved

in favor of the unfettered use of land. *Id.* Any restriction on the use of land must be clearly apparent in the language of the asserted covenant. *Id.* Where the language is clear and unambiguous, the parties will be confined to the meaning of the language employed, so long as the meaning does not defeat the plain and obvious purpose of the provision. *Windsong Enters., Inc. v. Upton,* 366 Ark. 23, 233 S.W.3d 145 (2006). In addition, we have said that the general rule governing the interpretation, application, and enforcement of restrictive covenants is that the intention of the parties as shown by the covenant governs. *Holaday v. Fraker,* 323 Ark. 522, 920 S.W.2d 4 (1996).

Appellant claims that it is undisputed that in appellees' chain of title, a deed from the Cox family requires the construction of a "suitable fence." Appellant also contends that the primary use of the land has been for raising cattle. He maintains that the first rule of interpretation of a contract is to give to the language employed the meaning that the parties intended. *Wal–Mart Stores, Inc. v. Coughlin,* 369 Ark. 365, 255 S.W.3d 424 (2007). Thus, he argues that the plain meaning of the restrictive covenant was that a fence be built that was suitable for keeping out cattle.

In bench trials, the standard of review on appeal is not whether there is substantial evidence to support the finding of the court, but whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. Ark. R. Civ. P. 52(a) (2002); *Reding v. Wagner,* 350 Ark. 322, 86 S.W.3d 386 (2002); *Shelter Mut. Ins. Co. v. Kennedy,* 347 Ark. 184, 60 S.W.3d 458 (2001). Disputed facts and determinations of credibility are within the province of the factfinder. *Pre–Paid Solutions, Inc. v. City of Little Rock,* 343 Ark. 317, 34 S.W.3d 360 (2001).

Appellees contend that all the witnesses testified that there has never been a fence around appellees' property. We note that Judge Cox testified that all of the properties had fences at one time; but he also acknowledged that he first noticed about ten years ago that the fence around appellees' property had disappeared. Appellees also emphasize that the covenant was not included in their deed. They cite *Fort Smith Gas Company v. Gean,* 186 Ark. 573, 55 S.W.2d 63 (1932), for the proposition that where a covenant imposes a burden on real estate for the benefit of the grantor personally, it does not follow the land into the possession of an assignee. Here, there was no language in the covenant reflecting that the covenant was to run with the land. Appellees argue that the fence covenant in the 1978 deed was for the personal benefit of the grantor, J.B. Cox, Jr., who utilized the property to raise cattle. The property has not been used for raising cattle for some time. Accordingly, the trial court's finding that this restriction was personal in nature and did not run with the land is affirmed.

Any restriction on the use of land must also be clearly apparent in the language of the covenant. *Cochran v. Bentley,* 369 Ark. 159, 251 S.W.3d 253 (2007). The reference to a "suitable fence" in the covenant at issue is not clearly apparent. The covenant has not been enforced, and it was not included on appellees' deed. Thus, the trial court's finding that the covenant is unduly vague in that it fails to specify the purpose of the fence or what type or kind of fence is suitable is not clearly erroneous.

### III. *Prohibition of Cattle Guards*

Appellant argues that the trial court's prohibition of his use of cattle guards is error, as it is not an unreasonable burden on the use of the easement. Appellant cites *Massee v. Schiller,* 243 Ark. 572, 420 S.W.2d 839 (1967), where the Arkansas Supreme Court upheld 'a chan-

cellor's ruling that cattle guards could be used at each end of an easement. The *Massee* court noted that what is reasonable depends on the facts and circumstances of each case. *Id.* ₁₂He further cites *Hatchett v. Currier*, 249 Ark. 829, 461 S.W.2d 934 (1971), where our supreme court held that cattle guards should be installed, and that it would not be too burdensome to require those using the road at issue to close the gates on those cattle guards and the gates used when the cattle guards had been bypassed. Thus, appellant argues that cattle guards, properly constructed and placed, would not unreasonably interfere with appellees' or others' use of the easement. Further, allowing cattle guards would allow appellant the full use of his land.

Appellees argue that, under *Craig, supra,* as a general rule, when the character of an easement is once fixed, no material alterations can be made in physical conditions which are essential to the proper enjoyment of the easement except by agreement. Here, the public-road easement developed to serve the subdivision, which has grown over the last thirty years. Appellees contend that utilization of the property as pasture land to run cattle would be inconsistent with the rights of the public and land owners in the area and would create a hazard. The trial court prohibited cattle guards and prohibited appellant from interfering in any manner with the general public's ability to use Katie Drive or the ability of the City of Waldron or Scott County to maintain and upkeep Katie Drive. We find no error in the trial court's ruling.

Affirmed.

PITTMAN and ROBBINS, JJ., agree.