2014 Ark. App. 175

**Delmar G. (George) OSBORN,
Appellant**

v.

**Donna L. Cole TENNISON and
Carlous Tennison, wife and
husband, Appellees.**

**No. CV–13–740.**

Court of Appeals of Arkansas.

March 12, 2014.

the A road was part of the easement, and further erred by authorizing the appellees to modify the gate on the A road. Mr. Osborn also argues that the easement in this case is personal to only appellee Donna Tennison. We affirm.

In 1985, Mr. Osborn and his wife owned property in Marion County and conveyed a parcel of land to Donna Cole (now Tennison) and her parents, as joint tenants with right of survivorship. The conveyance included the following easement across the Osborns' property:

> A private road and utility easement for ingress and egress over and across the road as it now exists extending from county road known as Jimmie's Creek Road in Section 12, across the North half of Section 13 and into the Southwest quarter of Section 13, all in Township 19 North, Range 16 West, which easement is for the exclusive use of Grantors and Grantees only.

The warranty deed provided that the conveyance was to Ms. Tennison and her parents, and "unto their heirs and assigns forever."

In 1992, Mr. Osborn and his wife deeded their interest in their property to Mr. Osborn's two daughters, with the conveyance being subject to all existing easements. Mr. Osborn retained a life estate in the property, and his wife has since died. Mr. Osborn's daughters and their husbands have acknowledged that the Tennisons have an easement running through the property.

In 1993, Donna married Carlous Tennison. Donna's father is now deceased, and her mother has deeded to Donna her interest in their property. Donna has permitted Carlous to use the easement for farming operations.

The litigation in this case was initiated when the Tennisons filed a complaint

Davis Law Firm, by: Steven B. Davis, Harrison, for appellant.

Michael E. Kelly, Yellville, for appellees.

KENNETH S. HIXSON, Judge.

Appellant Delmar G. Osborn appeals from an amended order whereby the trial court, among other things, issued an injunction enjoining Mr. Osborn from interfering with or obstructing an easement in favor of the appellees, Donna L. Cole Tennison and her husband Carlous Tennison. The roadway at issue runs southbound across appellant's property and forks into two roads known as the "A" road and "B" road, which both access the Tennison property.

In this appeal, Mr. Osborn argues that the trial court clearly erred in finding that

against Mr. Osborn on April 13, 2012. In their complaint, the Tennisons alleged that Mr. Osborn had obstructed the roadways included in Donna's easement by the use of gates and locks, and that he had also blocked their use of the roads with trees and other debris, which interrupted the Tennisons' farming operations. The Tennisons asked for an injunction against Mr. Osborn restraining him from interfering with or obstructing the roadways, and for permission to construct a gate large enough to permit farming equipment ingress and egress.

On May 10, 2012, Mr. Osborn filed an answer denying the material allegations in the Tennisons' complaint. On May 21, 2012, Mr. Osborn filed a counterclaim asking that the easement be terminated. In his counterclaim, Mr. Osborn alleged that the easement at issue was personal in nature and only to be used by the grantors and grantees, and that it was understood that the grantees would use the road because it was the only access to their property. Mr. Osborn alleged that since the sale was consummated in 1985, several other roads have been used by the Tennisons to access their property and thus the purpose of the easement had ended. Mr. Osborn also alleged that the 1985 warranty deed was drafted at the behest of Donna Tennison and her parents, and that any ambiguity in the easement should be construed against the drafters. Finally, Mr. Osborn asserted that Carlous Tennison and his agents were in violation of the easement because the easement gave no authority for him or his agents to traverse the property.

Donna Tennison testified at the bench trial held on September 25, 2012. She testified that after she and her parents acquired their property from the Osborns in 1985 it was used for cattle farming. Mrs. Tennison stated that they used both the A road and the B road to access their land, and she thought that both of these roads were included in the easement.

Mrs. Tennison described the A road as the more important road because it was used to access the location of their cattle. Mrs. Tennison stated that the B road is a steep road that accessed a stone quarry. She indicated that the B road is difficult to use and is unsuitable for hay or cattle trucks.

Mrs. Tennison testified that within a few years of the conveyance in 1985, Mr. Osborn built a fence between the parties' properties. Gates were later constructed on both the A road and B road, but the gate at the A road is only four feet wide and is too narrow to drive a truck through.

Mrs. Tennison testified that since marrying Carlous Tennison in 1993, she has given him permission to use the roads to assist in farming the property. Mrs. Tennison has also given others involved in their farming operation permission to use the roads.

Carlous Tennison testified that for the past two years Mr. Osborn has engaged in a campaign of blocking their access to the roads by changing the locks and barricading the roads with debris. This resulted in Mr. Tennison filing police complaints against Mr. Osborn and ultimately the filing of this lawsuit.

Mr. Tennison indicated that the B road is too steep for a large truck, and that they can only bring eight bales of hay at a time on a 16–foot flatbed. He stated that if they could use the A road, their large trucks could drive directly to the barn and save them several days of extra work. He said that he would like to place a larger gate at the location where the A road connects the two properties.

Mr. Tennison testified that he spoke to Mr. Osborn's two daughters, who present-

ly own the adjoining properly, and they told him that they thought he had the right to use the two roads. The daughters presented a plat showing both the A road and B road as part of the easement.

Mr. Osborn testified that the easement consists only of the quarry road (the B road), and does not include the A road. Mr. Osborn acknowledged that Mrs. Tennison had the right to use the B road, but he stated that nobody else was authorized to use the easement. Mr. Osborn agreed that the A road is a good road and is much better to use than the B road.

The trial court entered an order on February 15, 2013, which contained a description of the easement and included the following findings:

8. That Delmar G. Osborn has obstructed the roadways referenced above, to which the Plaintiffs are entitled to use, has attempted to obstruct by use of gates and locks the free use of said roads including efforts by Delmar G. Osborn to place trees or other debris in the roadways blocking the free use of said roads.

9. That this has interrupted the farming operation of Donna L. Cole/Tennison and her husband Carlous Tennison and caused both inconvenience and economic damage.

10. That an injunction should be issued against Delmar G. Osborn, also known as George Osborn, from interfering with or obstructing the roadways described above and as noted hereinafter.

11. That the road noted on Exhibit "A" of the attachment to the Complaint references Cole/Tennison easement, including both the A prong and B prong, were roads in existence at the time of conveyance from Delmar G. Osborn and Frances A. Osborn to Marvin L. Cole and Quintelle R. Cole, husband and wife, and Donna L. Cole, as joint tenants dated August 28, 1985 and that said roadway shall not be interfered with by Delmar G. Osborn, except that he and the Plaintiffs shall be allowed to place their own individual locks on a chain on gates at point of entry of said roadway from the County road and at the gate located at the common boundary between the Plaintiffs and Defendant.

12. That the Plaintiffs and their permittees, including employees, shall be allowed to use said roadway and the Defendant shall be enjoined from interfering with said use.

13. That each party will ensure to leave the gates closed when not in use in order to ensure that livestock would not be free to escape from the enclosures of the respective parties and neither party shall in any way damage or obstruct the individual locks of the other party, thereby ensuring privacy and security mutually between the parties as to their lands.

14. That the Plaintiffs shall be allowed to install and maintain a gate of sufficient width to allow trucks and trailers large enough to carry hay and large bales of hay at points of intersection with the Cole/Tennison easement, both A prong and B prong, at their own expense.

On March 25, 2013, the trial court entered an amended order that contained all of the findings in the original order, and inserted the following three paragraphs:

10. Defendant filed a Counterclaim. In said Counterclaim, Defendant alleged that the easement should only be restricted to the heirs and assigns of the original parties to the contract, Defendant, his wife, Marvin Cole, Quintelle Cole and Donna Cole, now Tennison. Plaintiffs respond, pointing to the lan-

guage of the deed at issue, stating that the deed was binding on the heirs and assigns of the parties. Defendant replies that the contradictory language in the deed creates an ambiguity that should be construed against the drafter, namely, the Plaintiffs. The Court finds that, in essence, Defendant is asking the Court to strike the heirs and assigns language from the deed. The Court will not blue line the deed in question as Arkansas law binds the Court to give full effect to all language in the deed. The Court is sympathetic to Defendant's argument, but it must fail.

11. Defendant further argues in his pleadings that the Court should terminate the easement as Plaintiff's have numerous other ways to reach the property. Defendant further argues that the original easement was offered because that was Plaintiff's only access to the property. Plaintiffs respond that they have the deeded easement, they are entitled to it and there should be no termination. The termination of an easement is governed by *Sluyter v. Hale Fireworks Partnership*, 370 Ark. 511, 262 S.W.3d 154 (2007). Since the parties did not agree to terminate the easement, merge the easement and/or the easement to Plaintiff's was not prescripted, the Court can find no basis to terminate the easement. The Court will state again that it is sympathetic to the argument of the Defendant. Defendant believes he was helping a neighbor years ago and the need to help may no longer be there. However, the agreement/deed signed between parties and the conduct of the parties since the deed at issue, leads the Court to believe that the elements necessary to terminate the easement are not present.

12. At trial, it was alleged that the easement in question had two roads, an "A" road and a "B" road. The "B" road is the one in more frequent use. Plaintiffs and their witnesses testified both forks, "A" and "B" were used. Defendant hotly contested this point stating that the "A" road was never part of the original deal and offering into evidence a Google map print of the area showing the "A" road going only to his house, not to Plaintiff's property. Further, Defendant vigorously argues that he would not allow Plaintiffs two access points across his property, especially the "A" road that crosses his property where he runs his cattle. Further, over objection of the Plaintiffs, the court received testimony from Defendant, that, if the "A" road was included in the deed, the road was abandoned due to long periods of non-use. Finally, Defendant argues that the deed in question states the Plaintiffs were to receive a road and not roads and that to state otherwise goes against the plain language of the Deed. The Court viewed the property, including the "A" road. The initial portion of the "A" road follows the path of the maps introduced at trial, including Plaintiff's topo map that shows both "A" prong and "B" prong. It appears, from the Court's viewing, that both prongs of the "A" and "B" roads were in use at some time in the past by the Plaintiffs and were not abandoned. Both branches "A" and "B" are declared to be existing roads and easements in favor of the Plaintiffs, their heirs and assigns.

The final paragraph of the amended order provides, "This amended order is made to reflect certain findings of fact and conclusions of law which supplement the order previously entered on February 15, 2013 filed herein."

Before considering the arguments raised by Mr. Osborn in this appeal, we must first consider whether we have jurisdiction. In the Tennisons' brief, the appel-

lees argue that we lack jurisdiction and the appeal must be dismissed because Mr. Osborn failed to file a notice of appeal within thirty days of the original order entered on February 15, 2013. We, however, disagree with the appellees and conclude that we have jurisdiction to hear this appeal.

Rule 4(a) of the Arkansas Rules of Appellate Procedure–Civil provides that a notice of appeal shall be filed within thirty days of entry of judgment. Rule 4(b) provides for an extension of the thirty-day period in certain circumstances:

Upon timely filing in the circuit court of a motion for judgment notwithstanding the verdict under Rule 50(b) of the Arkansas Rules of Civil Procedure, a motion to amend the court's findings of fact or to make additional findings under Rule 52(b), a motion for a new trial under Rule 59(a), or any other motion to vacate, alter, or amend the judgment made no later than 10 days after entry of judgment, the time for filing notice of appeal shall be extended for all parties. The notice of appeal shall be filed within thirty (30) days from entry of the order disposing of the last motion outstanding. However, if the circuit court neither grants nor denies the motion within thirty (30) days of its filing, the motion shall be deemed denied by operation of law as of the thirtieth day, and the notice of appeal shall be filed within thirty (30) days from that date.

█ In this case the trial court entered an order on February 15, 2013, which ordered Mr. Osborn to refrain from interfering with or obstructing the A road or B road. However, that order did not specifically address the claims made by Mr. Osborn in his counterclaim, and therefore, the February 15 order was not a final order. The trial court's amended order entered on March 25, 2013, made additional findings rejecting the claims in Mr. Osborn's counterclaim and confirming the existence of the easement in favor of the Tennisons, their heirs and assigns. The trial court clearly had jurisdiction to enter the amended order. Also on March 25, 2013, Mr. Osborn filed a motion for new trial, which was deemed denied by operation of law on April 24, 2013. Mr. Osborn filed his notice of appeal on May 23, 2013, which was within thirty days of the deemed-denial date and therefore timely.

█ Mr. Osborn's first argument on appeal is that the trial court erred in finding that the A road was part of the easement. Although Mr. Osborn alleged below that the A road was never part of the easement granted to Mrs. Tennison in 1985, he does not argue that on appeal. Instead, Mr. Osborn now argues on appeal that although the A road was part of the original granted easement, the easement over the A road had been abandoned through years of nonuse.

The appellees assert in their brief that this argument has been waived because it was not raised below. However, we conclude otherwise. Although Mr. Osborn did not raise the issue of abandonment and termination of the easement in his pleadings, he elicited testimony about the issue at trial. Moreover, the trial court evidently allowed the pleadings to conform to the proof because, in paragraph twelve of the amended order, the trial court specifically addressed this claim and found that neither the A road nor the B road had been abandoned and declared both roads to be easements in favor of the Tennisons. Therefore, we will address this argument on appeal.

█ We review cases that traditionally sound in equity de novo on the record, but we will not reverse a finding of fact by the trial court unless it is clearly erroneous. *Acuna v. Watkins*, 2012 Ark. App. 564, 423

S.W.3d 670. A finding is clearly erroneous when, although there is evidence to support it, on the entire evidence we are left with a definite and firm conviction that a mistake has been committed. *Id.* In reviewing a trial court's findings, we give due deference to the trial court's superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. *Id.*

In his brief, Mr. Osborn cites *Sluyter v. Hale Fireworks Partnership,* 370 Ark. 511, 262 S.W.3d 154 (2007), where it was stated that an easement can terminate either by expiring in accordance with the intent of the parties manifested in the creating transaction, or by being extinguished by the course of events subsequent to its creation. In *Johnson v. Ramsay,* 76 Ark.App. 485, 492, 67 S.W.3d 598, 602 (2002), we wrote:

> An easement may be lost by abandonment. Abandonment will be established where the owner of the easement does or permits to be done any act inconsistent with its future enjoyment. Mere non-use does not constitute abandonment. Rather, the easement owner must relinquish or give up his rights with the intent of never resuming or claiming his right or interest. To abandon means to give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in. Whether abandonment exists in any given case depends on the particular circumstances. (citations omitted).

There was testimony by the appellees demonstrating that the easement over the A road had been used by the grantees in the past and had not been abandoned. Mrs. Tennison testified that she and her parents had used the A road for five or six years to access their cattle, but that they began using the B road after Mr. Osborn placed the narrow gate at the A road that constricted the opening in the fence to such a degree that large trucks could not utilize the A road to access their properly. In Mr. Tennison's testimony, he testified that since 1993 he had used the A road to drive up to the gate during winter weather when the B road was too steep to use. He stated that about four or five years ago Mr. Osborn told them that they could place a larger gate on the A road, but that Mr. Osborn later changed his mind. There was also testimony that the A road remained in good shape, and Mr. Tennison indicated that they would use the road in their farming operations if they were permitted to install a wider gate. Mere non-use does not constitute abandonment, *Johnson, supra,* and on this record we cannot say that the trial court clearly erred in finding that the A road had not been abandoned. Therefore, we affirm the trial court's finding that the A road was included in the easement.

Mr. Osborn next argues that the trial court erred in authorizing the Tennisons to modify the gate on the A road. Mr. Osborn also contends that this remedy was barred by Arkansas Code Annotated section 18–61–101 (Repl.2003), which is the seven-year statute of limitations for maintaining an action in law or equity for any lands. However, pursuant to Rule 8(c) of the Arkansas Rules of Civil Procedure, the statute of limitations is an affirmative defense that must be pleaded, and if not, the defense is waived. In this case Mr. Osborn never raised the statute of limitations as a defense below, and therefore that issue is waived on appeal.

Moreover, the trial court did not clearly err in permitting the Tennisons to install a gate wide enough to use for their farming operations. The general rule regarding the obstruction by fences or gates of such private easements by the owner of

the servient estate is that a fence may not be erected so as to entirely obstruct the way, but that unless it is expressly stipulated or it appears from the terms of the grant or the surrounding circumstances that the way shall be an open one, without gates, the owner of the servient estate may erect gates across the way if they are so located, constructed or maintained as not unreasonably to interfere with the right of passage, when they are necessary for the preservation and proper and efficient use of lands constituting the servient estate. *Jordan v. Guinn & Etheridge*, 253 Ark. 315, 485 S.W.2d 715 (1972). In this case Mr. Osborn had the right to maintain a fence between the parties' property, so long as the gate on the A road was constructed in a way so as to not interfere with the appellees' use of their right of passage. The gate constructed by Mr. Osborn was only four feet wide, and we hold that the trial court did not err in permitting the Tennisons to construct a wider gate so they can use the A road as access to farm their properly.

■ Mr. Osborn's remaining argument is that the easement in this case was personal to Mrs. Tennison because it was established for the exclusive use of the grantors and grantees only. Mr. Osborn concedes that Ms. Tennison's personal right to use the easement extends to her invitees. *See Bean v. Johnson*, 279 Ark. 111, 649 S.W.2d 171 (1983). However, he contends that, by the express language in the warranty deed, the easement does not run with the land and cannot transfer to Ms. Tennison's heirs.

■ When interpreting a deed, the court gives primary consideration to the intent of the grantor. *Winningham v. Harris*, 64 Ark.App. 239, 981 S.W.2d 540 (1998). When the court is called on to construe a deed, we will examine a deed from its four corners for the purpose of ascertaining that intent from the language employed. *Id.* The intent of the grantor should be garnered solely from the language in the deed unless the language of the instrument is ambiguous, uncertain, or doubtful. *Bennett v. Henderson*, 281 Ark. 222, 663 S.W.2d 180 (1984).

■ An appurtenant easement runs with the land and serves a parcel of land known as the dominant tenement, while the parcel of land on which the easement is imposed is known as the servient tenement. *Wilson v. Brown*, 320 Ark. 240, 897 S.W.2d 546 (1995). In this case the trial court found from the language employed in the warranty deed that the easement ran with the land, and this finding was not erroneous. The warranty deed described the properly and the easement conveyed to Ms. Tennison and her parents, followed by this language: "To have and to hold the same unto said GRANTEES and their heirs and assigns forever, with all appurtenances thereunto belonging." This language makes it clear that the easement was being conveyed to the grantees and their heirs and assigns, as found by the trial court.

Affirmed.

GLADWIN, C.J., and VAUGHT, J., agree.