Cite as 2023 Ark. App. 247

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-22-374

| | |
|---|---|
| JAMES FOX<br><br>APPELLANT<br><br>V.<br><br>TERESA AND LESTER ALEXANDER<br>APPELLEES | **Opinion Delivered** May 3, 2023<br><br>APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT<br>[NO. 17CV-21-85]<br><br>HONORABLE MARC MCCUNE, JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

James Fox appeals the circuit court's order that enforced an easement in favor of his neighbors, Teresa and Lester Alexander. He argues that the circuit court erred in finding that the easement is appurtenant to the land. We affirm the circuit court's order.

Fox and the Alexanders are adjoining landowners in Crawford County. Both parties acquired their property from Earlene and David Flippin; Fox acquired his property on 6 March 2018, and the Alexanders acquired their property on 15 December 2020. The Alexanders' property contains the Flippins' original homestead, which was accessed for over fifty years by a gravel roadway that runs through property now owned by Fox. Both warranty deeds conveying the properties contain the following reservation: "NOTE: Grantor reserves 'rights to the easement right of way on the East side of property' as shown on survey by Satterfield Land Surveyors P.A., dated September 3, 2013 as Job No. 39,666

for their use and benefit." In addition, the warranty deed to Fox notes that the property is "[s]ubject to easements, rights-of-way, and protective covenants of record, if any."

On 28 December 2020, less than two weeks after the Alexanders had bought their property, Fox's attorney sent a letter to the Alexanders and advised them that they had no right to use the gravel drive. The letter stated that Mr. Flippin had reserved a personal right to use the gravel drive, but that personal right could not be assigned to another. On 9 March 2021, the Alexanders petitioned to enforce the easement or, alternatively, to establish an easement for right of way. The petition alleged that Fox had intentionally interfered with the Alexanders' use of the easement by blocking the gravel roadway with fallen trees. The Alexanders asserted that within the "appurtenances" conveyed in their warranty deed was the right of ingress and egress, which runs with the land and is not personal to the grantors. The Alexanders also alleged the existence of an easement by implication, easement by necessity, or prescriptive easement.

In July 2021, the circuit court granted the Alexanders access to the claimed easement during the pendency of the case. In October 2021, Fox filed a counterclaim for damages caused by trespass, which occurred when the Alexanders had three truckloads of gravel deposited on the driveway. Fox alleged that the Alexanders had illegally and intentionally exercised possession of a portion of his property "in a willful and wanton manner" and that he was entitled to damages, including punitive damages.

The circuit court convened a hearing in March 2022, and David Flippin offered the following relevant testimony.

> Q: Now, when you sold that bottom piece of property to Mr. Fox, were you still using that roadway at that time?

2

A: Oh, yes. In fact, I made it plain when I sold him the property that that—that that deed —that that land didn't go with it. That road didn't go with it, it went to the property back there. When I was signing the—the papers of it to—the place where we was making them out . . . I stated it three different times before I ever signed the papers that that road was an easement. It went back to that—to that other property.

Q: So you let Mr. Fox know when you sold him that property that it was an easement?

A: I sure did.

Q: Did you ever intend for you to be the only person who could have ever used that roadway?

A: No. No.

. . . .

Q: Now, Mr. Flippin, you continued to live at your home for a little bit after selling that property to Mr. Fox; is that correct?

A: Oh, yeah. I lived there quite a while.

Q: And it looks . . . like you sold your home to my client roughly two years later in 2020; is that right?

A: Say that—yeah, about.

Q: Now, when you sold my client his property, was it your understanding that he would be able to access his property through the easement that you had previously reserved with Mr. Fox?

. . . .

A: Sure.

. . . .

Q: And then is there any other access to the home that you had that's now been sold to Mr. and Mrs. Alexander?

3

A:     There was a—there's a gap for I can let cows in and out, but as far as a road, no.

Lester Alexander testified that it was "absolutely" his understanding when he purchased his property that an easement to use the roadway that goes through Fox's property was conveyed to him. Fox, on the other hand, testified that when he purchased his property, it was his understanding that the Flippins could use the road but could not convey that use to anyone else. Fox said that he knew the Flippins planned to move to Van Buren so their use of the road "would be very limited." He asked them to word the closing so that "[t]hat new address is not transferrable, it does not go to anyone else. Mr. Flippin could not give it away, sell it to anyone, or anything." Fox said that he and David Flippin never discussed anyone else being able to use the easement. Fox also acknowledged that his property was not damaged when the Alexanders deposited the gravel on the roadway.

In its order, the circuit court found the following:

10.    That when Mr. David Flippin sold that property to the Defendant; he included the language that it was subject to a right-of-way easement, being the 14' gravel roadway on the east side of the property and as shown on the Satterfield survey.

. . . .

12.    That when Mr. Flippin sold that property to the Plaintiffs; he included that same language regarding the right-of-way easement access within their recorded deed.

13.    That after a review of the deeds, the Court finds that if the easement in the Defendant's deed was for David and Earlene Flippin's sole use, then Mr. Flippin would have included that restrictive language within the deed.

14.    That instead of including any restrictive language, the Court finds that Mr. Flippin intentionally recited the right-of-way easement language within the deed for each party to this matter.

4

15. That if there had been any ambiguity concerning the deeds, then testimony of Mr. David Flippin made it clear that the grantor's intent was for the easement to be appurtenant and run with the land. However, this Court finds intent was clear from the legal instruments themselves.

The circuit court granted the Alexanders' motion to enforce the easement, specifically finding that "from the language of the deed that the easement is appurtenant to the land and meant for the access to Plaintiff's property." The court also awarded the Alexanders seven hundred dollars in damages and dismissed Fox's counterclaim. Fox has timely appealed the court's order.

An appurtenant easement runs with the land and serves a parcel of land known as the dominant tenement, while the parcel of land on which the easement is imposed is known as the servient tenement. *Riffle v. Worthen*, 327 Ark. 470, 939 S.W.2d 294 (1997). An easement in gross, however, is personal to the parties; it does not have a dominant tenement because it benefits a person or an entity and not the land. *Wilson v. Brown*, 320 Ark. 240, 897 S.W.2d 546 (1995). When an easement is annexed as an appurtenance to land, whether by express or implied grant or reservation, or by prescription, it passes with a transfer of the land, even though it may not be specifically mentioned in the instrument of transfer. *Carver v. Jones*, 28 Ark. App. 288, 773 S.W.2d 842 (1989).

Interpretation of a deed is required if it does not specify whether an easement is appurtenant or in gross. *Riffle, supra.* The basic rule in the construction of deeds is to ascertain and give effect to the real intention of the parties, particularly of the grantor, as expressed by the language of the deed. *Barton Land Servs., Inc. v. SEECO, Inc.*, 2013 Ark. 231, 428 S.W.3d 430; *Gibson v. Pickett*, 256 Ark. 1035, 512 S.W.2d 532 (1974). The

5

intention of the parties must be gathered from the four corners of the instrument itself, if that can be done, and when so done, it will control. *Gibson, supra.* The intention of the parties is to be gathered not from some particular clause, but from the whole context of the agreement. *Id.* Every part of the deed should be harmonized and reconciled so that all may stand together and none be rejected. *Barton Land Servs., supra.* We will not resort to rules of construction when a deed is clear and contains no ambiguities, but only when the language of the deed is ambiguous, uncertain, or doubtful. *Id.* The distinction between appurtenant easements and easements in gross normally depends upon the unique facts of each individual case. *Winningham v. Harris*, 64 Ark. App. 239, 981 S.W.2d 540 (1998).

We review cases that traditionally sound in equity de novo on the record, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Acuna v. Watkins*, 2012 Ark. App. 564, 423 S.W.3d 670. A finding is clearly erroneous when, although there is evidence to support it, on the entire evidence we are left with a definite and firm conviction that a mistake has been committed. *Id.* In reviewing a circuit court's findings, we give due deference to the circuit court's superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. *Id.*

Fox asserts that the circuit court erred in finding that the easement is appurtenant to the land. He points to the language in the warranty deed from the Flippins, which states that "Grantor reserves 'rights to the easement right of way on the East side of property' as shown on survey by Satterfield Land Surveyors P.A., dated September 3, 2013 as Job No. 39,666 *for their use and benefit*." (Emphasis added.) Fox contends that this proves the Flippins reserved an easement in gross because there is no mention of heirs, assigns, successors, or

6

any other "words indicating an intention to retain a right to assign the retained right." *Fox* discusses several cases in support, including *Field v. Morris*, 88 Ark. 148, 114 S.W. 206 (1908), and *Ft. Smith Gas Co. v. Gean*, 186 Ark. 573, 55 S.W.2d 63 (1932).

In *Field*, the grantors conveyed a certain tract of land but reserved the use of 1½ acres using the words "reserving to ourselves the use of the 1½ acres free of rent . . . and we are to have the use of 1½ acres free of rent as long as we or others holding under us may want to use same for running machinery at said point." 88 Ark. at 148, 114 S.W. at 207. The Arkansas Supreme Court held that the "as long as" language showed only how long the grantor was to have use of the land free of rent, and "'others holding under us' refers to persons holding like tenants. No mention of heirs, assigns, or successors, or words of the same import, is made in the reservation." *Id.* at 152, 114 S.W. at 208. The supreme court concluded that the right to use the 1½ acres was personal to the grantor and died with him.

In *Ft. Smith Gas*, the grantors conveyed a right of way across 240 acres of land to be used for the laying and maintenance of pipelines for the transportation of oil and gas. The consideration named in the deed for the grant of the right of way was the sum of one dollar "and the further consideration of all gas used by grantors for domestic use free of charge, to be paid when such grant shall be used or occupied." 186 Ark. at 574, 55 S.W.2d at 64. The lower court found that the right to the use of gas free of charge was a covenant running with the land, but the Arkansas Supreme Court held that the agreement to furnish the gas free of charge in consideration of the conveyance of the right of way was a personal right to the grantor: "The consideration named in the conveyance . . . does not limit the use of gas to the grantor in his residence or at any other place, but makes it personal to him to be

7

used where and when it may be convenient so long as its use is applied for domestic purposes." *Id*. at 577, 55 S.W.2d at 65; *see also Riffle*, 327 Ark. at 475–76, 939 S.W.2d at 297 (use of the words "heirs and assigns forever" in the conveyance of the actual land coupled with the absence of similar words of reservation in the conveyance of the right of ingress and egress indicates that the intent of the grantors was to convey a personal right of access or an easement in gross).

The Alexanders counter that the language in the deed demonstrates the intent for the easement to be assignable and appurtenant. They assert that the language in their deed is similar to the language in the deed at issue in *Osborn v. Tennison*, 2014 Ark. App. 175, 434 S.W.3d 1. In *Osborn*, the conveyance to Tennison included an easement "for ingress and egress" across the Osborns' property and specified that the easement was "for the exclusive use of Grantors and Grantees only." *Id*. at 2, 434 S.W.3d at 3. The warranty deed also provided that the conveyance was to Tennison, her parents, and "unto their assigns forever." *Id*., 434 S.W.3d at 3. The lower court found that the easement ran with the land, and this court affirmed, holding,

> The warranty deed described the properly [sic] and the easement conveyed to Ms. Tennison and her parents, followed by this language: "To have and to hold the same unto said GRANTEES and their heirs and assigns forever, with all appurtenances thereunto belonging." This language makes it clear that the easement was being conveyed to the grantees and their heirs and assigns, as found by the trial court.

*Id*. at 12, 434 S.W.3d at 9.

The Alexanders contend that the deed in question here contains similar language:

> That David A. Flippin and spouse, Earlene Flippin, hereinafter called GRANTORS, for and in consideration of the sum of Ten Dollars and Zero Cents and other good and valuable consideration, paid by Lester E. Alexander

8

and Teresa A. Alexander, a married couple as tenants by the entirety, the receipt of which is hereby acknowledged do hereby grant, bargain, sell and convey unto Lester E. Alexander and Teresa A. Alexander, a married couple as tenants by the entirety hereinafter called GRANTEES, and unto their heirs, successors and assigns forever, the following described property situated in Crawford County, State of Arkansas, to-wit: See Attached Exhibit 'A.'"

The next paragraph in the deed recites, "TO HAVE AND TO HOLD, The same unto the GRANTEES and unto their heirs, successors and assigns forever, with all appurtenances thereunto belonging." Finally, a note on exhibit A reads, "Grantor reserves 'rights to the easement right of way on the East side of property' as shown on survey by Satterfield Land Surveyors P.A., dated September 3, 2013 as Job No. 39,666 for their use and benefit." The Alexanders assert that, like in *Osborn*, the language of the deed makes it clear that the easement was conveyed to the grantees for their full use of the driveway and for any heirs, successors, and assigns that the land and easement may be conveyed to in the future.

Both parties argue that the clear language of the Alexander deed supports their respective positions. While the circuit court found that the language of the deed was not ambiguous, whether a deed is ambiguous is a matter of law that we review de novo. *Deltic Timber Corp. v. Newland*, 2010 Ark. App. 276, 374 S.W.3d 261. Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one equally reasonable interpretation. *Magic Touch Corp. v. Hicks*, 99 Ark. App. 334, 260 S.W.3d 322 (2007). We hold that the intent expressed in the deed with regard to the easement is sufficiently uncertain as to warrant looking outside the four corners of the deed. To that end, we agree with the circuit court that the testimony of David Flippin made clear that the grantor's intent was for the easement to be appurtenant and run with the land. We therefore affirm the circuit court's order.

9

Affirmed.

GLADWIN and WOOD, JJ., agree.

*Daily & Woods, P.L.L.C.*, by: *Jerry L. Canfield* and *Colby T. Roe*, for appellant.

*The Law Offices of Craig L. Cook*, by: *Nathan A. Roop*, for appellees.